No. 18-56292

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITY OF LOS ANGELES,

Plaintiff-Appellee,

v.

JEFFERSON B. SESSIONS III, *et al.*

Defendants-Appellants.

On Appeal from the United States District Court
for the Central District of California

## BRIEF FOR APPELLANTS

JOSEPH H. HUNT
  *Assistant Attorney General*

NICOLA T. HANNA
  *United States Attorney*

HASHIM M. MOOPPAN
  *Deputy Assistant Attorney General*

MARK B. STERN
DANIEL TENNY
KATHERINE TWOMEY ALLEN
LAURA E. MYRON
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7222*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4819*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................... 1

STATEMENT OF JURISDICTION .................................................................... 2

STATEMENT OF THE ISSUE ........................................................................... 3

PERTINENT STATUTES AND REGULATIONS ............................................. 3

STATEMENT OF THE CASE ............................................................................ 3

      A.      The Immigration and Nationality Act ....................................... 3

      B.      The Bryne JAG Program ........................................................... 5

      C.      Prior Proceedings ...................................................................... 8

SUMMARY OF ARGUMENT .......................................................................... 10

STANDARD OF REVIEW ............................................................................... 12

ARGUMENT ..................................................................................................... 12

      The Notice and Access Conditions for FY 2017 Are Valid ............... 12

CONCLUSION .................................................................................................. 20

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

STATUTORY ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**          <u>**Page(s)**</u>

*American Sur. Co. of N.Y. v. Marotta*,
    287 U.S. 513 (1933) ........................................................................ 17

*Arizona v. United States*,
    567 U.S. 387 (2012) .......................................................................... 3

*Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*,
    179 F.3d 725 (9th Cir. 1999) .................................................... 12, 20

*Clark v. Martinez*,
    543 U.S. 371 (2005) .......................................................................... 4

*Dalton v. Specter*,
    511 U.S. 462 (1994) ........................................................................ 19

*DISH Network Corp. v. FCC*,
    653 F.3d 771 (9th Cir. 2011) .......................................................... 12

*Federal Trade Comm'n v. MTK Mktg., Inc.*,
    149 F.3d 1036 (9th Cir. 1998) ........................................................ 17

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018) ....................................................................... 5

*Stone v. INS*,
    514 U.S. 386 (1995) ........................................................................ 19

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001) .......................................................................... 17

**Statutes:**

Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* .................................................. 1

    8 U.S.C. § 1226(a).................................................................... 4, 15

    8 U.S.C. § 1226(c)........................................................................ 15

8 U.S.C. § 1226(c)(1) ................................................................................... 5

8 U.S.C. § 1226(c)(2) ................................................................................... 5

8 U.S.C. § 1231(a)(1) ................................................................................... 4

8 U.S.C. § 1231(a)(1)(A) ........................................................................... 11

8 U.S.C. § 1231(a)(1)(B)(iii) ............................................................ 4, 11, 14

8 U.S.C. § 1231(a)(2) ............................................................................. 4, 15

8 U.S.C. § 1231(a)(4) ................................................................................. 14

8 U.S.C. § 1231(a)(4)(A) ......................................................................... 4, 11

Joint Resolution Making Continuing Appropriations for FY 1985,
    Pub. L. No. 98-473, 98 Stat. 1837 (1984) ..................................... 18

Violence Against Women and Department of Justice Reauthorization Act of 2005,
    Pub. L. No. 109-162, 119 Stat. 2960 (2006) ........................... 13, 18

6 U.S.C. § 251(2) ........................................................................................ 4

6 U.S.C. § 552(d) ........................................................................................ 4

8 U.S.C. § 1373 .......................................................................................... 5

8 U.S.C. § 1373(a) ...................................................................................... 5

8 U.S.C. § 1373(b) ...................................................................................... 5

28 U.S.C. § 509 ........................................................................................ 12

28 U.S.C. § 530C(a)(4) ............................................................................. 13

28 U.S.C. § 1292(a) .................................................................................... 3

28 U.S.C. § 1331 ........................................................................................ 2

34 U.S.C. § 10101 ................................................................................ 12

34 U.S.C. §§ 10101-10102 ................................................................... 16

34 U.S.C. §§ 10101-10111 ................................................................... 17

34 U.S.C. § 10102(a)(6) ........................................ 2, 6, 9, 11, 13, 16, 17, 18

34 U.S.C. § 10110 ................................................................................ 12

34 U.S.C. § 10141(b) ........................................................................... 16

34 U.S.C. §§ 10151-10158 ............................................................... 6, 17

34 U.S.C. § 10152(a)(1) .................................................................. 5, 12

34 U.S.C. § 10152(c)(1) ......................................................................... 9

34 U.S.C. § 10153(A) ........................................................................ 5, 9

34 U.S.C. § 10153(A)(4) ........................................................... 6, 9, 12, 15

34 U.S.C. § 10153(A)(5)(C) ......................................................... 6, 12, 15

34 U.S.C. § 10153(A)(5)(D) ............................................................ 6, 12

34 U.S.C. § 10156 .................................................................................. 5

34 U.S.C. § 10444(7) ........................................................................... 18

42 U.S.C. § 3712(a)(6) (2000) ............................................................. 18

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ..................................................................... 3

**Legislative Material:**

H.R. Rep. No. 109-233 (2005) ............................................................. 18

**Other Authorities:**

Office of Justice Programs, U.S. Dep't of Justice, *About Us*,
    https://go.usa.gov/xPmSC...................................................................................... 16

Office of Justice Programs, U.S. Dep't of Justice, *OJP Grant Process Overview*,
    https://go.usa.gov/xPmkA...................................................................................... 6

## INTRODUCTION

This case involves two conditions that the Department of Justice (Department) has placed on the receipt of FY 2017 law-enforcement grants under the Byrne Justice Assistance Grant (Byrne JAG) program in order to discourage frustration of federal law enforcement. The conditions concern the interaction of federal and state regulatory schemes. The federal government regulates aliens under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.* The States regulate the same individuals in various ways, including regulation under their criminal laws. Under the INA, aliens in state custody cannot be removed until they are released, but prompt federal action is often required when aliens are released, and the Department of Homeland Security (DHS) may arrest and detain aliens pending removal pursuant to administrative warrants. The two Byrne JAG conditions at issue in this appeal confirm the importance of sharing information to ensure that state regulation of potentially removable aliens does not impair the operation of federal immigration law.

The first condition, referred to as the "notice" condition, requires that grant recipients have a policy of informing DHS of the scheduled release date of an alien in criminal custody, after receiving a formal request for notification from DHS. The second condition, referred to as the "access" condition, requires that grant recipients have a policy of allowing federal agents to meet with incarcerated aliens in order to inquire about the aliens' rights to remain in the United States. The Acting Assistant Attorney General for the Office of Justice Programs (OJP), who administers the Byrne

JAG program, imposed the notice and access conditions pursuant to his statutory powers, which "includ[e] placing special conditions on all grants, and determining priority purposes for formula grants." 34 U.S.C. § 10102(a)(6).

The City has sworn that it cannot confirm that it complies with these conditions and that doing so would damage community trust and harm public safety. The City brought this lawsuit raising statutory and constitutional challenges to the Byrne JAG conditions. The district court granted the City's request for a preliminary injunction prohibiting the Department from implementing the conditions or withholding money from the City on the basis that Los Angeles refused to certify that it was a cooperating jurisdiction.

The district court erred in concluding that the City is likely to succeed on the merits. The court mistakenly reasoned that 34 U.S.C. § 10102(a)(6) confers no independent authority to impose conditions at all, reasoning that would render its "special conditions" and "priority purposes" language superfluous. The same reasoning would largely negate the Department's broad authority to impose conditions on Byrne JAG funds, which it has historically done without objection, and inflicts constraints that have no basis in the statute.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331 to adjudicate its federal law challenge to certain federal grant conditions. Dkt. No. 1, at 5 (¶ 17). The district court granted the plaintiff's request for a preliminary injunction with

respect to conditions imposed on the Byrne JAG grant program on September 13, 2018. ER1.  On October 1, 2018, the defendants filed a timely notice of appeal.  ER6; *see* Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction under 28 U.S.C. § 1292(a).

## STATEMENT OF THE ISSUE

Whether the district court erred in holding that the FY 2017 notice and access conditions exceeded the Department's statutory authority.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.  The Immigration and Nationality Act

The federal government has "broad, undoubted power over the subject of immigration and the status of aliens," and Congress has "specified which aliens may be removed from the United States and the procedures for doing so."  *Arizona v. United States*, 567 U.S. 387, 394, 396 (2012).  As described below, recognizing the importance of States' strong interest in criminal justice under their laws, Congress provided that aliens in state criminal custody generally cannot be removed until they are released. Congress designed this system based on the premise that States and localities would not interfere with the federal government's detention and removal of the aliens once state custody has ended.

In general, when the Secretary of Homeland Security issues a warrant for an alien's arrest, DHS may arrest and detain the alien "pending a decision on whether the

3

alien is to be removed from the United States."  8 U.S.C. § 1226(a).[1]  Once an alien is

subject to a final removal order, DHS shall remove the alien within 90 days and shall

detain the alien during that removal period.  *Id.* § 1231(a)(1), (2).

When an alien is already in local criminal custody, however, the federal

government generally cannot take custody of and remove the alien until he is released.

For an alien who is already subject to a final order of removal, DHS shall remove the

alien within 90 days of his release from local criminal custody, 8 U.S.C.

§ 1231(a)(1)(B)(iii), and "may not remove an alien who is sentenced to imprisonment

until the alien is released from imprisonment," *id.* § 1231(a)(4)(A).  In general, DHS

"shall detain the alien" beginning on his release from local custody and throughout the

90-day removal period, and "[u]nder no circumstance" may DHS release the alien

during the removal period if he has a qualifying criminal history.  *Id.* § 1231(a)(2).

When an alien who is not yet subject to a final order of removal is released from

local criminal custody, the Secretary may issue a warrant for the alien's arrest and DHS

may arrest and detain the alien under the Secretary's general authority in § 1226(a).  If

the alien has a certain criminal history or has engaged in certain terrorist activities,

however, DHS "shall" take the alien into custody "when the alien is released" from

local criminal custody and may not (with a narrow exception) release the alien for the

---

[1] Section 1226(a) refers to the Attorney General, but functions performed under
the detention and removal program have been transferred to the Secretary of Homeland
Security.  *See* 6 U.S.C. §§ 251(2), 552(d); *Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

duration of the removal proceedings. 8 U.S.C. § 1226(c)(1), (2); *see Jennings v. Rodriguez*, 138 S. Ct. 830, 846-47 (2018).

Reinforcing the expected cooperation inherent in the INA, Congress enacted, among other provisions, 8 U.S.C. § 1373, which provides that "State" and "local government entit[ies] or official[s] may not prohibit, or in any way restrict," any government entity or official from sharing "information regarding the citizenship or immigration status, lawful or unlawful, of any individual" with federal immigration authorities. 8 U.S.C. § 1373(a); *see also id.* § 1373(b) (providing that "no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from" "[s]ending" to or "requesting or receiving" from federal immigration authorities "information regarding the immigration status, lawful or unlawful, of any individual," "[m]aintaining" such information, or "[e]xchanging" such information with "any other . . . government entity").

### B.   The Byrne JAG Program

**1.**   The Department of Justice, through OJP, administers the Byrne JAG program, which provides federal funds to States and units of local government for broad criminal-justice purposes. 34 U.S.C. § 10152(a)(1). The grant funds are divided among grantees based on a statutory formula, largely premised on population and crime statistics. *Id.* § 10156. States and localities that seek funding under the program must submit an application "in such form as the Attorney General may require." *Id.* § 10153(A). Among other requirements, applicants must certify that they "will comply

5

with" 34 U.S.C. §§ 10151-10158 "and all other applicable Federal laws," that "for each fiscal year covered by an application, the[y] shall maintain and report such data, records, and information (programmatic and financial) as the Attorney General may reasonably require," and that "there has been appropriate coordination with affected agencies." *Id.* § 10153(A)(5)(D), (4), (5)(C).

**2.** In accordance with this guidance, OJP specified in the FY 2017 solicitation for Byrne JAG applications that applicants would be subject to two related conditions. When OJP approves a Byrne JAG application, it sends a grant-award document to the applicant that enumerates, among other things, the conditions applicable to the award. *See, e.g.*, ER8-27 (Greenville FY 2017 grant award); OJP, *Grant Process Overview*.[2] The applicant then typically has 45 days to review the conditions and decide whether to accept the award document. OJP, *Grant Process Overview*. The Assistant Attorney General (AAG) for OJP imposes such conditions pursuant to his statutory powers, which "includ[e] placing special conditions on all grants, and determining priority purposes for formula grants." 34 U.S.C. § 10102(a)(6). This authority has previously been used to impose conditions including information technology requirements, *see, e.g.*, ER17 (Greenville Appl.) (¶¶ 28-30); protections for human research subjects, *id.* (¶ 31); restrictions on the purchase of certain military style equipment, ER21-22 (¶¶ 45-50); requirements regarding body armor purchases, ER20 (¶¶ 39-41); and training

---

[2] https://go.usa.gov/xPmkA.

requirements, ER18 (¶¶ 34-35). Although OJP has required compliance with conditions like these for many years, Congress has never objected to the practice and no jurisdiction has ever challenged OJP's authority to include them.

At issue here are two conditions that OJP announced in the FY 2017 solicitation. *See* Dkt. No. 1, at 30 (¶ 88). The "notice" condition requires that, with respect to any "program or activity" funded by the grant, the grantee must have a policy designed to ensure that, when DHS provides a formal written request for advance notice of the scheduled release date and time for a particular alien at a particular facility, the facility will "as early as practicable" provide notice to DHS. ER26 (¶ 56.1.B). The "access" condition requires that, with respect to any "program or activity" funded by the grant, the grantee must have a policy providing that federal agents will be "given access" to correctional facilities for the purpose of meeting with aliens and to "inquire as to such individuals' right to be or remain in the United States." *Id.* (¶ 56.1.A). The "Rules of construction" in the award documents state that nothing in the conditions require grantees to detain "any individual in custody beyond the date and time the individual would have been released on the absence of this condition." ER25 (¶ 55.4.B). The documents also make clear that the conditions impose no requirements in relation to any requests by federal authorities to detain aliens, and that the notice condition requires "only as much advance notice as practicable" before the release of an alien. *Id.*

The Assistant Attorney General for OJP announced that compliance with these special conditions "w[ould] be an authorized and priority purpose of the award." ER94;

7

*see also* ER26. These two conditions are designed to ensure that the activities of federal law-enforcement grant recipients do not impair the federal government's ability to ensure public safety and the rule of law by detaining and removing aliens upon their release from local criminal custody.

**3.** In August 2017, the City submitted an application for FY 2017 Byrne JAG funding and appended a letter explaining that it was "withholding any commitment to, or confirmation of, its compliance with the [challenged] Conditions." ER122-23. The City has averred that it "cannot determine what is required of it under the Notice Condition, and so would be unable to make an unqualified assurance [of compliance]" and in addition, "cannot determine whether DOJ would consider Los Angeles' policies and the operations of its jail facilities to be consistent with the agency's Access Condition." Dkt. No. 1, at 21 (¶¶ 65-66).

## C. Prior Proceedings

On September 29, 2017, Los Angeles filed this suit. As relevant here, the City asserted that the notice and access conditions in the FY 2017 Byrne JAG grant solicitation are not authorized by statute; that they violate the Spending Clause, the separation of powers, and the Tenth Amendment; and that their imposition was arbitrary and capricious. Dkt. No. 1, at 30-36 (¶¶ 86-108). On December 5, 2017, by stipulation of the parties, the district court stayed proceedings on those counts of the City's complaint addressing the Byrne JAG program while it considered the validity of the City's challenge to the Community Oriented Policing Services (COPS) grant

8

program. *See* Dkt. No. 52. On July 3, 2018, the parties jointly filed a request that proceedings on the Byrne JAG program counts should resume, which the district court granted on July 18, 2018. *See* Dkt. Nos. 81, 84.

On September 13, 2018, the district court granted the City's request for a preliminary injunction. *See* ER1. The court held that Los Angeles was likely to succeed on the merits of its challenges to the notice and access conditions because, in the court's view, the statute establishing the Byrne JAG Program does not authorize those conditions. The court explained that the Attorney General's authority over the Byrne JAG program is "extremely limited and leaves little room for discretion." ER3. The statute authorizes the Attorney General to "determine the 'form' of the application," *id.* (quoting 34 U.S.C. § 10153(A)), to "reasonably require . . . the applicant [to] maintain and report . . . data, records, and information," *id.* (quoting 34 U.S.C. § 10153(A)(4)) (alterations in original), and to "'develop guidelines' for 'a program assessment . . . in coordination with the National Institute of Justice,'" *id.* (quoting 34 U.S.C. § 10152(c)(1)). In addition, the court rejected the Department's assertion that pursuant to 34 U.S.C. § 10102(a)(6), the Assistant Attorney General's statutory authority "includ[es] [placing] special conditions on all grants, and determining priority purposes for formula grants." ER3 (quoting 34 U.S.C. § 10102(a)(6)). That provision, the court explained, only "allows the Attorney General to delegate powers to the Assistant Attorney General to aid in administering the Office of Justice Programs, whereas the Byrne JAG grant is a Bureau of Justice Assistance Program that is codified in a different

subchapter of Chapter 101 and isolated from other discretionary grants." ER3-4. "Reading § 10102(a)(6) to authorize the Attorney General to impose conditions on all grants under the entire chapter contradicts the explicit grants of authority in other sections of the statute." ER4.[3]

The court also concluded that the City had demonstrated that it faced a threat of irreparable harm and that the balance of equities favored an injunction, and thus granted the City's request for a preliminary injunction.

## SUMMARY OF ARGUMENT

The two grant provisions at issue are entirely proper conditions on the receipt of federal law-enforcement funds. The district court's contrary ruling rests on a misunderstanding of the relevant statutory provisions.

The Department acted within its statutory authority in including the notice and access conditions on the receipt of FY 2017 Byrne JAG funds. The notice condition requires that grantees have a policy of notifying DHS of the scheduled release date of an alien in criminal custody, after receiving a formal request for notification from DHS. The access condition requires that grantees have a policy of allowing federal agents to meet with incarcerated aliens in order to inquire about the aliens' rights to remain in the United States.

---

[3] The court expressly declined to reach the City's constitutional or Administrative Procedure Act challenges. ER4.

These conditions ensure the basic cooperation that the INA envisions when aliens are subject to simultaneous regulation by two sovereigns. The INA generally contemplates that aliens taken into criminal custody by States or localities will not, until released, be removed by the federal government. *See, e.g.*, 8 U.S.C. § 1231(a)(4)(A). In addition, the INA often requires prompt action by DHS as soon as release takes place, providing, for example, that within 90 days of "the date the alien is released from detention or confinement," DHS "shall remove" an alien subject to a final order of removal, *id.* at § 1231(a)(1)(A), (B)(iii). The implicit but necessary premise is that States and localities will not use their priority to frustrate immigration enforcement by refusing to inform the federal government of release dates or denying federal officials access to persons who may be subject to removal.

These conditions fall within the Assistant Attorney General for OJP's statutory authority to "plac[e] special conditions on all grants, and determin[e] priority purposes for formula grants." 34 U.S.C. § 10102(a)(6). In concluding otherwise, the district court fundamentally misunderstood the Assistant Attorney General's role in administering the Department's grant programs. In particular, the district court's holding was premised on its mistaken view that powers delegated to the Assistant Attorney General, who oversees the Byrne JAG Program and who imposed the conditions here, are irrelevant to the scope of the government's authority in implementing the program. Thus, because the court's grant of the preliminary injunction was premised on an error of law, it is by definition an abuse of discretion and should be reversed.

11

## STANDARD OF REVIEW

This Court "review[s] a district court's grant or denial of a preliminary injunction for abuse of discretion and the underlying legal principles de novo." *DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011). A court "by definition abuses its discretion when it makes an error of law." *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730 (9th Cir. 1999).

## ARGUMENT

### The Notice and Access Conditions for FY 2017 Are Valid.

**A.** The Byrne JAG Program provides that the "Attorney General may . . . make grants to States and units of local government" for law enforcement and related purposes. 34 U.S.C. § 10152(a)(1). Among other requirements set out specifically in the Byrne JAG statute, applicants must certify that they "will comply with all provisions of this part and all other applicable Federal laws," *id.* § 10153(A)(5)(D), and agree to undertake various activities to advance law-enforcement goals. For example, applicants must provide an assurance that they will "maintain and report such data, records, and information (programmatic and financial) as the Attorney General may reasonably require," and that "there has been appropriate coordination with affected agencies." *Id.* § 10153(A)(4), (5)(C).

The Attorney General has "final authority over all functions, including any grants" made by OJP. 34 U.S.C. § 10110; 28 U.S.C. § 509. Under the Attorney General's authority, an Assistant Attorney General heads OJP. *See* 34 U.S.C. § 10101;

28 U.S.C. § 530C(a)(4). Importantly, the Byrne JAG Program is subject to the general authority of the Assistant Attorney General for OJP. In particular, the AAG may "exercise such other powers and functions as may be vested in [him] pursuant to [Chapter 101 of Title 34, which includes the Byrne JAG Program] or by delegation of the Attorney General, *including* placing *special conditions* on all grants, and determining *priority purposes* for formula grants." 34 U.S.C. § 10102(a)(6) (emphases added). Notably, the phrase conferring this general authority to impose special conditions and priority purposes was added in the Violence Against Women and Department of Justice Reauthorization Act of 2005, the same law that created the current version of the Byrne JAG Program. Pub. L. No. 109-162, §§ 1111, 1152(b), 119 Stat. 2960, 3094, 3113 (2006). Special conditions established by the Assistant Attorney General in past years have included information technology requirements, ER17 (Greenville Appl.) (¶¶ 28-30); protections for human research subjects, *id.* (¶ 31); restrictions on the purchase of certain military style equipment, ER21-22 (¶¶ 45-50); requirements regarding body armor purchases, ER20 (¶¶ 39-41); and training requirements, ER18 (¶¶ 34-35). None of these special conditions have ever been questioned by Congress or challenged as *ultra vires* by any grant recipient, including the City of Los Angeles.

The Assistant Attorney General acted within his statutory authority in imposing the FY 2017 notice and access conditions, which are modest requirements designed to ensure information sharing, appropriate law-enforcement coordination to enhance

public safety, and detention of aliens in state or local criminal custody in a manner that does not pose an obstacle to the orderly enforcement of the immigration laws.

In accepting the "notice" condition, the applicant agrees that, for any "program or activity" funded by the grant, it will have a policy of informing DHS of the scheduled release date of an alien in criminal custody after receiving a formal written request from DHS. ER26 (¶ 56.1.B). In accepting the "access" condition, an applicant agrees that, with respect to any "program or activity" funded by the grant, it will have a policy providing that federal agents will be "given access" to correctional facilities for the purpose of meeting with aliens and to "inquire as to such individuals' right to be or remain in the United States." *Id.* (¶ 56.1.A).

In agreeing to these conditions, applicants thus simply agree that their law-enforcement activities will not impair the federal government's law-enforcement activities against suspected or convicted criminals. The structure of the INA contemplates that States and localities may prosecute and incarcerate for criminal offenses aliens who may be removable and, indeed, aliens as to whom a removal order has already issued, but also contemplates that federal immigration custody of such aliens will commence upon their release.

The INA provides that DHS "may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment," 8 U.S.C. § 1231(a)(4). But within 90 days of "the date the alien is released from detention or confinement," DHS "shall remove" an alien subject to a final order of removal. *Id.* § 1231(a)(1)(B)(iii).

14

During this removal period, DHS "shall detain" the alien, and, if the alien has a qualifying criminal history, "[u]nder no circumstance[s]" shall DHS release the alien during the removal period. *Id.* § 1231(a)(2). Similarly, when an alien is not yet subject to a final order of removal and is released from local criminal custody, DHS may execute a warrant under § 1226(a) to arrest and detain the alien, and, if the alien has a qualifying criminal history, DHS "shall" take the alien into custody "when the alien is released," *id.* § 1226(c). It is crucial to this cooperative law-enforcement framework that localities and States respond to requests for release-date information and permit federal agents to engage in voluntary interviews before releasing aliens from custody.

The propriety of the notice and access special conditions is underscored by the provisions in the Byrne JAG statute that authorize the Attorney General to "reasonably require" "programmatic" information about the funded program, 34 U.S.C. § 10153(A)(4), and to demand "appropriate coordination" with affected agencies, *id.* § 10153(A)(5)(C). Notice of an alien's release from local custody constitutes reasonable information about the law-enforcement and corrections programs funded by the grants. And access to an alien in local custody constitutes appropriate coordination with federal immigration authorities affected by those programs' custody over the alien.

**B.** The district court held that the notice and access conditions were not statutorily authorized, reasoning that the Attorney General has only limited authority under the Byrne JAG program, authority which does not extend to the ability to "add civil immigration conditions." ER3. The district court's conclusion is based on an

overly restrictive view of the Attorney General's statutory authority. Nothing in the statute supports the counterintuitive conclusion that applicants can insist on their entitlement to federal law-enforcement grants even as they refuse to provide the most basic cooperation in immigration enforcement, which the Attorney General has identified as a federal priority. The district court seriously erred in construing the statute to preclude such conditions.

The district court mistakenly held that 34 U.S.C. § 10102(a)(6) is inapplicable to the Byrne JAG program, declaring that the statute only "allows the Attorney General to delegate powers to the Assistant Attorney General to aid in administering the Office of Justice Programs, whereas the Byrne JAG grant is a Bureau of Justice Assistance Program that is codified in a different subchapter of Chapter 101 and isolated from other discretionary grants." ER3-4.

Section 10102(a)(6) appears in Subchapter I of Chapter 101. This subchapter (among other things) establishes the Office of Justice Programs, provides that the Assistant Attorney General for OJP heads the office, and sets forth his general powers. *See* 34 U.S.C. §§ 10101-10102. One of the functions of the Office of Justice Programs, and of its Assistant Attorney General, is to oversee the Bureau of Justice Assistance Grant Programs. *See id.* § 10141(b); OJP, *About Us*, https://go.usa.gov/xPmSC (OJP organizational chart). For that reason, the Assistant Attorney General for OJP is the authorizing official who signs the Byrne JAG award documents imposing the disputed conditions, *see* ER8. The statute that provides his general powers applies to his actions

in administering the Byrne JAG program, regardless of the unsurprising fact that the Byrne JAG Program is not authorized in the subchapter that creates OJP, but instead in a separate subchapter (subchapter IV), *see* 34 U.S.C. §§ 10151-10158. Thus, a plain reading of the statutory text indicates that the AAG's power includes, at a minimum, the power to "plac[e] special conditions on all grants" administered by OJP. *See id.* § 10102(a)(6).

Indeed, if the court were correct that § 10102(a)(6) does not apply outside of Subchapter I, then the power to "determin[e] priority purposes for formula grants" would have no meaning because Subchapter I does not establish any formula grants. *See* 34 U.S.C. §§ 10101-10111. And it likewise would render Congress's express "inclu[sion]" of the power to "plac[e] special conditions on all grants" meaningless if that power merely referred to special conditions already authorized elsewhere in Subchapter I. *See American Sur. Co. of N.Y. v. Marotta*, 287 U.S. 513, 517 (1933) ("In definitive provisions of statutes and other writings, 'include' is frequently, if not generally, used as a word of extension or enlargement rather than as one of limitation or enumeration."); *Federal Trade Comm'n v. MTK Mktg., Inc.*, 149 F.3d 1036, 1040 (9th Cir. 1998) (same).

Of course, it is a cardinal principle of statutory interpretation that "no clause, sentence, or word shall be [rendered] superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). That principle has particular force here because Congress expressly added the "special conditions" and "priority purposes" authority,

17

which would have been entirely unnecessary if it merely referred to pre-existing authority. Confirming the statute's plain text, a report accompanying the enactment of this language stated that the provision "allows the Assistant Attorney General to place special conditions on all grants and to determine priority purposes for formula grants." H.R. Rep. No. 109-233, at 101 (2005).

The statute previously authorized the Assistant Attorney General to "exercise such other powers and functions as may be vested in [him] pursuant to [what is now Chapter 101 of Title 34] or by delegation of the Attorney General." 42 U.S.C. § 3712(a)(6) (2000); *see also* Joint Resolution Making Continuing Appropriations for FY 1985, Pub. L. No. 98-473, § 603, 98 Stat. 1837, 2077 (1984). Congress later added the language at issue here, which makes clear that the Assistant Attorney General's authority "includ[es] placing special conditions on all grants, and determining priority purposes for formula grants." 34 U.S.C. § 10102(a)(6); *see* Pub. L. No. 109-162, § 1152(b), 119 Stat. at 3113. In other instances, Congress retained substantially the same, more limited language as previously found in the predecessor to 34 U.S.C. § 10102(a)(6). *Compare* 42 U.S.C. § 3712(a)(6) (2000) *and* 34 U.S.C. § 10102(a)(6), *with* 34 U.S.C. § 10444(7) (providing that Director of Violence Against Women Office, a separate grant-making office within the Department of Justice, "[e]xercis[es] such other powers and functions as may be vested in the Director pursuant to this subchapter or by delegation of the Attorney General").

18

This context confirms that Congress intended the "special conditions" and "priority purposes" language to confer distinctive and meaningful power. The district court's analysis provides no explanation for why this language was added. "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995). This Court should be particularly wary of interpreting the language to be a nullity because doing so would render invalid other conditions that past Assistant Attorneys General have imposed. *See supra* p. 14. As noted, those conditions have never previously been questioned.

Finally, the district court erred in concluding that, based on his determination that the notice and access conditions exceeded the Attorney General's statutory authority, "trying to impose such conditions is a violation of the separation of powers." ER4. As the Supreme Court has made clear, there is no support for the "proposition that every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* a violation of the Constitution." *Dalton v. Specter*, 511 U.S. 462, 472 (1994). Rather, the "distinction between claims that an official exceeded his statutory authority, on the one hand, and claims that he acted in violation of the Constitution, on the other, is . . . well established." *Id.* at 474.

As explained above, the Assistant Attorney General did not abuse his discretion or contravene any statutory limitation in including the notice and access conditions. Because the district court's only basis for concluding the City was likely to succeed on the merits of its claims is based on an error of law, the court's grant of a preliminary

injunction "by definition abuses its discretion" and should be reversed. *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730 (9th Cir. 1999).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

JOSEPH H. HUNT
*Assistant Attorney General*

NICOLA T. HANNA
*United States Attorney*

HASHIM M. MOOPPAN
*Deputy Assistant Attorney General*

MARK B. STERN
DANIEL TENNY
KATHERINE TWOMEY ALLEN

*s/ Laura E. Myron*
LAURA E. MYRON
BRAD HINSHELWOOD
*Attorneys, Appellate Staff*
*Civil Division, Room 7222*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4819*

November 2018

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellants state that *City of Los Angeles v. Sessions*, No. 18-55599 (oral argument held Aug. 30, 2018) is a related case pending before this Court.

*s/ Laura E. Myron*
LAURA E. MYRON

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,877 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Garamond 14-point font, a proportionally spaced typeface.


*s/ Laura E. Myron*
LAURA E. MYRON

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2018, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Laura E. Myron*
LAURA E. MYRON

# STATUTORY ADDENDUM

# **TABLE OF CONTENTS**

34 U.S.C. § 10102 ................................................................................ A1

34 U.S.C. § 10152 ................................................................................ A2

34 U.S.C. § 10153 ................................................................................ A4

8 U.S.C. § 1373................................................................................... A7

**34 U.S.C. § 10102**

**§ 10102. Duties and functions of Assistant Attorney General.**

(a) Specific, general and delegated powers

The Assistant Attorney General shall--

(1) publish and disseminate information on the conditions and progress of the criminal justice systems;

(2) maintain liaison with the executive and judicial branches of the Federal and State governments in matters relating to criminal justice;

(3) provide information to the President, the Congress, the judiciary, State and local governments, and the general public relating to criminal justice;

(4) maintain liaison with public and private educational and research institutions, State and local governments, and governments of other nations relating to criminal justice;

(5) coordinate and provide staff support to coordinate the activities of the Office and the Bureau of Justice Assistance, the National Institute of Justice, the Bureau of Justice Statistics, the Office for Victims of Crime, and the Office of Juvenile Justice and Delinquency Prevention; and

(6) exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants.

(b) Annual report to President and Congress

The Assistant Attorney General shall submit an annual report to the President and to the Congress not later than March 31 of each year.

A1

**34 U.S.C. § 10152**

**§ 10152. Description.**

(a) Grants authorized

 (1) In general

From amounts made available to carry out this part, the Attorney General may, in accordance with the formula established under section 10156 of this title, make grants to States and units of local government, for use by the State or unit of local government to provide additional personnel, equipment, supplies, contractual support, training, technical assistance, and information systems for criminal justice, including for any one or more of the following programs:

  (A) Law enforcement programs.

  (B) Prosecution and court programs.

  (C) Prevention and education programs.

  (D) Corrections and community corrections programs.

  (E) Drug treatment and enforcement programs.

  (F) Planning, evaluation, and technology improvement programs.

  (G) Crime victim and witness programs (other than compensation).

  (H) Mental health programs and related law enforcement and corrections programs, including behavioral programs and crisis intervention teams.

 (2) Rule of construction

Paragraph (1) shall be construed to ensure that a grant under that paragraph may be used for any purpose for which a grant was authorized to be used under either or both of the programs specified in section 10151(b) of this title, as those programs were in effect immediately before January 5, 2006.

(b) Contracts and subawards

A State or unit of local government may, in using a grant under this part for purposes authorized by subsection (a), use all or a portion of that grant to contract with or make one or more subawards to one or more--

 (1) neighborhood or community-based organizations that are private and nonprofit; or

 (2) units of local government.

 (3) Repealed. Pub.L. 109-271, § 8(h)(3), Aug. 12, 2006, 120 Stat. 767

(c) Program assessment component; waiver

(1) Each program funded under this part shall contain a program assessment component, developed pursuant to guidelines established by the Attorney General, in coordination with the National Institute of Justice.

(2) The Attorney General may waive the requirement of paragraph (1) with respect to a program if, in the opinion of the Attorney General, the program is not of sufficient size to justify a full program assessment.

(d) Prohibited uses

Notwithstanding any other provision of this Act, no funds provided under this part may be used, directly or indirectly, to provide any of the following matters:

(1) Any security enhancements or any equipment to any nongovernmental entity that is not engaged in criminal justice or public safety.

(2) Unless the Attorney General certifies that extraordinary and exigent circumstances exist that make the use of such funds to provide such matters essential to the maintenance of public safety and good order--

(A) vehicles (excluding police cruisers), vessels (excluding police boats), or aircraft (excluding police helicopters);

(B) luxury items;

(C) real estate;

(D) construction projects (other than penal or correctional institutions); or

(E) any similar matters.

(e) Administrative costs

Not more than 10 percent of a grant made under this part may be used for costs incurred to administer such grant.

(f) Period

The period of a grant made under this part shall be four years, except that renewals and extensions beyond that period may be granted at the discretion of the Attorney General.

(g) Rule of construction

Subparagraph (d)(1) shall not be construed to prohibit the use, directly or indirectly, of funds provided under this part to provide security at a public event, such as a political convention or major sports event, so long as such security is provided under applicable laws and procedures.

**34 U.S.C. § 10153**

**§ 10153. Applications**

(A) In general

To request a grant under this part, the chief executive officer of a State or unit of local government shall submit an application to the Attorney General within 120 days after the date on which funds to carry out this part are appropriated for a fiscal year, in such form as the Attorney General may require. Such application shall include the following:

(1) A certification that Federal funds made available under this part will not be used to supplant State or local funds, but will be used to increase the amounts of such funds that would, in the absence of Federal funds, be made available for law enforcement activities.

(2) An assurance that, not fewer than 30 days before the application (or any amendment to the application) was submitted to the Attorney General, the application (or amendment) was submitted for review to the governing body of the State or unit of local government (or to an organization designated by that governing body).

(3) An assurance that, before the application (or any amendment to the application) was submitted to the Attorney General--

(A) the application (or amendment) was made public; and

(B) an opportunity to comment on the application (or amendment) was provided to citizens and to neighborhood or community-based organizations, to the extent applicable law or established procedure makes such an opportunity available.

(4) An assurance that, for each fiscal year covered by an application, the applicant shall maintain and report such data, records, and information (programmatic and financial) as the Attorney General may reasonably require.

(5) A certification, made in a form acceptable to the Attorney General and executed by the chief executive officer of the applicant (or by another officer of the applicant, if qualified under regulations promulgated by the Attorney General), that--

(A) the programs to be funded by the grant meet all the requirements of this part;

(B) all the information contained in the application is correct;

(C) there has been appropriate coordination with affected agencies; and

(D) the applicant will comply with all provisions of this part and all other applicable Federal laws.

(6) A comprehensive Statewide plan detailing how grants received under this section will be used to improve the administration of the criminal justice system, which shall--

(A) be designed in consultation with local governments, and representatives of all segments of the criminal justice system, including judges, prosecutors, law enforcement personnel, corrections personnel, and providers of indigent defense services, victim services, juvenile justice delinquency prevention programs, community corrections, and reentry services;

(B) include a description of how the State will allocate funding within and among each of the uses described in subparagraphs (A) through (G) of section 10152(a)(1) of this title;

(C) describe the process used by the State for gathering evidence-based data and developing and using evidence-based and evidence-gathering approaches in support of funding decisions;

(D) describe the barriers at the State and local level for accessing data and implementing evidence-based approaches to preventing and reducing crime and recidivism; and

(E) be updated every 5 years, with annual progress reports that--

(i) address changing circumstances in the State, if any;

(ii) describe how the State plans to adjust funding within and among each of the uses described in subparagraphs (A) through (G) of section 10152(a)(1) of this title;

(iii) provide an ongoing assessment of need;

(iv) discuss the accomplishment of goals identified in any plan previously prepared under this paragraph; and

(v) reflect how the plan influenced funding decisions in the previous year.

(b) Technical assistance

(1) Strategic planning

Not later than 90 days after December 16, 2016, the Attorney General shall begin to provide technical assistance to States and local governments requesting support to develop and implement the strategic plan required under subsection (a)(6). The

A5

Attorney General may enter into agreements with 1 or more non-governmental organizations to provide technical assistance and training under this paragraph.

(2) Protection of constitutional rights

Not later than 90 days after December 16, 2016, the Attorney General shall begin to provide technical assistance to States and local governments, including any agent thereof with responsibility for administration of justice, requesting support to meet the obligations established by the Sixth Amendment to the Constitution of the United States, which shall include--

(A) public dissemination of practices, structures, or models for the administration of justice consistent with the requirements of the Sixth Amendment; and

(B) assistance with adopting and implementing a system for the administration of justice consistent with the requirements of the Sixth Amendment.

(3) Authorization of appropriations

For each of fiscal years 2017 through 2021, of the amounts appropriated to carry out this subpart, not less than $5,000,000 and not more than $10,000,000 shall be used to carry out this subsection.

**8 U.S.C. § 1373**

**§ 1373. Communication between government agencies and the Immigration and Naturalization Service**

(a) In general

Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

(b) Additional authority of government entities

Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual:

(1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.

(2) Maintaining such information.

(3) Exchanging such information with any other Federal, State, or local government entity.

(c) Obligation to respond to inquiries

The Immigration and Naturalization Service shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information.