**No. 18-56292**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

CITY OF LOS ANGELES,

Plaintiff-Appellee,

v.

MATTHEW G. WHITAKER, *et al.*

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the Central District of California

———————————

## REPLY BRIEF FOR APPELLANTS

———————————

JOSEPH H. HUNT
  *Assistant Attorney General*

NICOLA T. HANNA
  *United States Attorney*

HASHIM M. MOOPPAN
  *Deputy Assistant Attorney General*

MARK B. STERN
DANIEL TENNY
KATHERINE TWOMEY ALLEN
LAURA E. MYRON
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4819*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

ARGUMENT ........................................................................................................ 3

I.  The Notice and Access Conditions for FY 2017 Are Authorized
    By Statute ................................................................................................ 3

    A.  The City's Primary Argument Would Render the Key Statutory
        Language Superfluous ....................................................................... 3

    B.  The City's Other Statutory Arguments Are Meritless ............................... 12

II.  The Conditions Do Not Violate the Constitution or the APA ........................... 17

CONCLUSION ................................................................................................... 21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** <u>**Page(s)**</u>

*American Sur. Co. of N.Y. v. Marotta*,
  287 U.S. 513 (1933) ............................................................................. 7

*Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*,
  179 F.3d 725 (9th Cir. 1999) ............................................................. 1

*Bennett v. Kentucky Dep't of Educ.*,
  470 U.S. 656 (1985) ........................................................................... 16

*City and County of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) ........................................................... 13

*Dalton v. Specter*,
  511 U.S. 462 (1994) ........................................................................... 17

*Davis v. Monroe Cty. Bd. of Educ.*,
  526 U.S. 629 (1999) ........................................................................... 16

*Federal Trade Comm'n v. MTK Mktg., Inc.*,
  149 F.3d 1036 (9th Cir. 1998) ........................................................... 7

*Forest Grove Sch. Dist. v. T.A.*,
  557 U.S. 230 (2009) ........................................................................... 5

*Kansas v. United States*,
  214 F.3d 1196 (10th Cir. 2000) ......................................................... 17

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ........................................................................... 20

*Mayweathers v. Newland*,
  314 F.3d 1062 (9th Cir. 2002) ........................................................... 17

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ............................................................................. 20

*New York v. United States*,
  505 U.S. 144 (1992) ........................................................................... 17

*Pension Benefit Guar. Corp. v. LTV Corp.*,
    496 U.S. 633 (1990) ................................................................................. 13

*South Dakota v. Dole*,
    483 U.S. 203 (1987) ................................................................................. 18

*Thompson v. Runnels*,
    705 F.3d 1089 (9th Cir. 2013) ............................................................... 11

*United States v. Wise*,
    370 U.S. 405 (1962) ................................................................................. 13

*Virginia Dep't of Educ. v. Riley*,
    106 F.3d 559 (4th Cir. 1997) ................................................................. 16

*In re Yochum*,
    89 F.3d 661 (9th Cir. 1996) ..................................................................... 7

**Statutes:**

Immigration and Nationality Act:
    8 U.S.C. § 1101 *et seq.* ......................................................................... 14
    8 U.S.C. § 1226(c) ................................................................................... 15
    8 U.S.C. § 1231(a)(1)(A) ....................................................................... 15
    8 U.S.C. § 1231(a)(1)(B)(iii) .............................................................. 1, 15
    8 U.S.C. § 1231(a)(2) ............................................................................. 15
    8 U.S.C. § 1231(a)(4)(A) ..................................................................... 1, 15

Violence Against Women and Department of Justice Reauthorization
    Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960 (2006) ................. 3, 12, 19

34 U.S.C. §§ 10101-10111 ............................................................................. 4

34 U.S.C. § 10102(a)(6) ............................................................ 2, 3, 4, 6-8, 10, 12

34 U.S.C. § 10141(b) ..................................................................................... 4

34 U.S.C. § 10142 note .................................................................................. 5

34 U.S.C. § 10142(2) ..................................................................................... 5

34 U.S.C. § 10142(3)–(6) .............................................................................. 5

34 U.S.C. §§ 10151-10158 ................................................................. 4

34 U.S.C. § 10152 ............................................................................ 14

34 U.S.C. § 10152(a)(1) ................................................................... 11

34 U.S.C. § 10152(d) ......................................................................... 9

34 U.S.C. § 10153(A)(4) ............................................................ 10, 11

34 U.S.C. § 10153(A)(5)(C) ....................................................... 10, 11

34 U.S.C. § 10153(a)(5)(D) ............................................................... 9

34 U.S.C. § 10202(c)(1)(B) ............................................................... 9

34 U.S.C. § 10202(c)(1)(C) ............................................................... 9

34 U.S.C. § 10228(a) ....................................................................... 14

34 U.S.C. § 10442(b) ......................................................................... 6

34 U.S.C. § 10446(e)(3) ..................................................................... 6

34 U.S.C. § 20927(a) ......................................................................... 8

34 U.S.C. § 30307(e)(2)(A) ............................................................... 8

34 U.S.C. § 40914(b)(1)(B) ............................................................... 7

34 U.S.C. § 60105(c) ......................................................................... 8

42 U.S.C. § 3573(a)(11) (2000) ....................................................... 19

**Regulation:**

28 C.F.R. § 66.12(a) (2014) .............................................................. 8

**Legislative Material:**

H.R. Rep. No. 109-233 (2005) .......................................................... 7

**Other Authority:**

OJP, *About Us*, https://go.usa.gov/xPmSC .......................................................................... 4

## INTRODUCTION AND SUMMARY OF ARGUMENT

On appeal, the City of Los Angeles (the City) has abandoned the district court's reasoning in enjoining the notice and access conditions on the 2017 Byrne JAG funding awards. The City thus all but concedes that the district court's decision was premised on an error of law, which is "by definition" an abuse of discretion. *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730 (9th Cir. 1999).

The new grounds proposed by the City for sustaining the injunction are no more persuasive than those relied on by the district court. In challenging conditions on federal law enforcement grants that require basic cooperation between local and federal law enforcement officials, the City never even acknowledges the statutory link between state criminal regulation of aliens and federal immigration regulation. In an effort to accommodate local criminal justice interests, Congress has provided that the Department of Homeland Security (DHS) generally cannot remove aliens in local criminal custody until they are released. *See* 8 U.S.C. § 1231(a)(4)(A). But Congress has also established a clear mandate for federal law enforcement, directing DHS to detain and remove aliens promptly after their release from local criminal custody. *Id.* § 1231(a)(1)(B)(iii). Congress's decision to accommodate local criminal custody prior to removal by DHS thus assumes and depends on at least a minimal level of information sharing. The conditions challenged here reasonably further the operation of the careful balance established by Congress.

These modest conditions fall well within the authority of the Department of Justice (Department). The Assistant Attorney General for the Office of Justice Programs (OJP) is vested with authority to, among other things, "plac[e] special conditions on all grants, and determin[e] priority purposes for formula grants." 34 U.S.C. § 10102(a)(6). In urging that this provision confers no authority other than that already vested by other statutory provisions, the City would both render this provision a nullity and also render unlawful the Department's longstanding practice of imposing conditions on Byrne JAG awards.

The City's attempt to bolster its position under the Constitution and the Administrative Procedure Act (APA) is without merit: the conditions do not violate the Spending Clause and are not arbitrary and capricious. Again, the conditions are reasonably related to the Byrne JAG statute because they simply ensure that local law enforcement do not obstruct federal immigration enforcement through their local criminal regulation of aliens. Nothing in the Spending Clause or the APA requires the Department, when distributing federal law enforcement grants, to disregard an applicant's deliberate obstruction of federal law enforcement.

## ARGUMENT

## I.     The Notice and Access Conditions for FY 2017 Are Authorized By Statute.

### A.     The City's Primary Argument Would Render the Key Statutory Language Entirely Superfluous.

**1.**    Congress vested the Assistant Attorney General for OJP (AAG) with authority to, among other things, exercise "powers and functions . . . vested in [the AAG] pursuant to this chapter [101 of Title 34] or by delegation of the Attorney General, including *placing special conditions* on all grants, and *determining priority purposes* for formula grants." 34 U.S.C. § 10102(a)(6) (emphases added).  Congress added the phrase conferring authority to adopt special conditions and priority purposes in the same statute that created the current version of the Byrne JAG program.  *See* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, §§ 1111, 1152(b), 119 Stat. 2960, 3094, 3113 (2006).

The district court mistakenly believed that 34 U.S.C. § 10102(a)(6) is inapplicable to the Byrne JAG program.  It reasoned that the provision only "allows the Attorney General to delegate powers to the Assistant Attorney General to aid in administering the Office of Justice Programs, whereas the Byrne JAG grant is a Bureau of Justice Assistance Program that is codified in a different subchapter of Chapter 101 and isolated from other discretionary grants." ER3-4.

Los Angeles has made no attempt to defend this reasoning and, indeed, it is indefensible.  As explained in our opening brief (pp. 16-17), Section 10102(a)(6) appears

in Subchapter I of Chapter 101. This subchapter (among other things) establishes the Office of Justice Programs, provides that the Assistant Attorney General for OJP heads the office, and sets forth his general powers, including overseeing the Bureau of Justice Assistance Grant programs. *See* 34 U.S.C. § 10141(b); OJP, *About Us*, https://go.usa.gov/xPmSC (OJP organizational chart). For that reason, the AAG is the authorizing official who signs the Byrne JAG award documents imposing the disputed conditions. *See* ER8. That the Byrne JAG Program is not authorized in the subchapter that creates OJP, but is contained in a separate subchapter (Subchapter IV), *see* 34 U.S.C. §§ 10151-10158, is a common-sense and natural way to structure the subchapters of Chapter 101. Regardless of where the various grant programs are codified, the statute makes plain that the AAG's powers include, at a minimum, the authority to "plac[e] special conditions on all grants" administered by OJP. *See id.* § 10102(a)(6). Indeed, if the court were correct that Section 10102(a)(6) does not apply outside of Subchapter I, then the power to "determin[e] priority purposes for formula grants" would have no meaning because Subchapter I does not establish any formula grants. *See id.* §§ 10101-10111.

It is thus understandable that Los Angeles does not attempt to defend the grounds on which it prevailed below. And as demonstrated below, the new grounds offered on appeal by the City likewise provide no basis for sustaining the injunction.

**2.** The City's primary contention (Br. 33-34) is that, because the "special conditions" and "priority purposes" authority in Section 10102(a)(6) is listed in an

"including" clause, it "does not enlarge the [AAG's] powers" but rather merely "confirms" whatever "already existing authority" the AAG had under the preceding clause—*i.e.*, the powers vested in the AAG pursuant to Chapter 101 of Title 34 or by delegation of the Attorney General. The fundamental flaw in this argument is that it contravenes the basic canon of interpretation that statutory provisions (especially statutory amendments) should not be rendered meaningless. US Br. 17, 19. Los Angeles cannot explain why Congress would have amended the statute to add an "including" clause that accomplished absolutely nothing.

Although the City is correct that an "including" clause may be used as "a term of illustration, signifying that what follows is an example of the preceding principle," Br. 34, the term performs such an "elucidative" function only where it is necessary to "clarify[]" the meaning of the preceding clause in the first place, Br. 40; *see also Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 242 (2009). Yet here, of course, Congress would not have needed to clarify that the AAG could impose "special conditions" and determine "priority purposes" for grants if other provisions of Chapter 101 already specifically vested that authority in the AAG or if the AG had delegated that authority to the AAG. For example, 34 U.S.C. § 10142(2), on which the City relies (Br. 26), already explicitly vested the authority to impose "terms and conditions" on Bureau of Justice Assistance (BJA) grants on the AAG. *See id.* § 10142 note (transferring "all functions of Director of Bureau of Justice Assistance, other than those enumerated in [34 U.S.C. § 10142(3)–(6)] . . . to Assistant Attorney General for Office of Justice

5

Programs"). Los Angeles surely cannot suggest that Congress needed a statutory amendment to clarify that the AAG possessed authority that Congress had already expressly conferred on him.

The City does not advance its argument by noting that Congress authorized the AG to impose "reasonable conditions" when administering a particular grant program designed to combat violence against women. Br. 26 (citing 34 U.S.C. § 10446(e)(3)). That program is not administered by the Assistant Attorney General for OJP, but instead is administered by the Violence Against Women Office, which is a "separate and distinct office" within DOJ that is headed by a Director "who shall report to the Attorney General." 34 U.S.C. § 10442(b). Section 10102(a)(6) confers similar authority to the AAG for OJP in connection with grants administered by OJP.

Because the authority to determine "priority purposes" and to impose "special conditions" does not exist elsewhere in Chapter 101, Title 34, or Title 28 (which, among other things, specifies the functions of the Attorney General), the City's reasoning suggests that the only thing Congress theoretically could have been trying to accomplish when it amended Section 10102(a)(6) was to provide that the AAG could impose "special conditions" and determine "priority purposes" in the event that Congress later created such authority. Neither law nor logic supports the City's position that Congress sought to specify authority to implement future legislation which presumably would vest authority as a future Congress saw fit.

6

In short, this is one of several circumstances where, rather than serving a clarifying function, the term "including" instead means "and" or "in addition to." *See, e.g.*, *Federal Trade Comm'n v. MTK Mktg., Inc.*, 149 F.3d 1036, 1040 (9th Cir. 1998) ("'[I]nclude' is frequently, if not generally used as a word of extension or enlargement rather than as one of limitation or enumeration.") (quoting *In re Yochum*, 89 F.3d 661, 668 (9th Cir. 1996)); *see also American Sur. Co. of N.Y. v. Marotta*, 287 U.S. 513, 517 (1933) (same). And even if the "including" clause were read to refer only to authority that was conferred on the AAG in chapter 101 of title 34, the "including" clause *itself*, as the legislative history confirms, "allows the Assistant Attorney General to place special conditions on all grants and to determine priority purposes for formula grants." H.R. Rep. No. 109-233, at 101 (2005). Whatever the limits of the Justice Department's previous authority, the amendment undoubtedly established that the AAG has the power to impose "special conditions" and determine "priority purposes" for grants. If that were not the case, there would have been no reason to enact the amendment.

The City's attempt to "fight superfluity with superfluity" is misguided. Br. 39. Los Angeles erroneously contends that the Department's interpretation of Section 10102(a)(6) would render meaningless statutory provisions in which Congress set out limited penalties of specific percentages of Byrne JAG funds that may be withheld for non-compliance with certain other requirements. Br. 23, 37; *see, e.g.*, 34 U.S.C. § 40914(b)(1)(B) ("Attorney General may withhold not more than 4 percent" of Byrne JAG funds for failure to provide information relevant to National Instant Criminal

Background Check System); *id.* § 60105(c) ("not more than a 10-percent reduction" for failure to provide information regarding death of persons in state custody); *id.* § 20927(a) (ten percent of Byrne JAG funds for jurisdictions that do not implement the Sex Offender Registration and Notification Act requirements); *id.* § 30307(e)(2)(A) (five percent of funds received for prison purposes for States that have not adopted and complied with national standards regarding prison rape). It is not superfluous for Congress to set particular penalties that the AG may impose for non-compliance with specific provisions, and also to authorize the AAG to impose additional conditions that States and localities must satisfy to receive grants at all.

**3.** The City's sole argument that would give Section 10102(a)(6) independent effect is its contention (Br. 41-43) that "special conditions" should be read to mean a particular type of special condition imposed on "high-risk" grantees under a general Department regulation, 28 C.F.R. § 66.12(a) (2014), that was in effect between 1988 and 2014. But that cabined construction of Section 10102(a)(6) is untenable.

Contrary to the City's suggestion, the cited regulation did not purport to define the term "special conditions" to cover the universe of all potential special conditions applicable to all types of grantees. Rather, the regulation merely described one type of special condition that was applicable to one type of grantee. And the City does not explain why the only type of special conditions authorized under Section 10102(a)(6) would be those applicable to high-risk grantees.

8

Moreover, the City has no explanation for why Congress would need to provide additional statutory authority for a regulation that existed, apparently unchallenged, under the authority that predated the 2006 enactment. Conversely, Congress had every reason to specify that if the AAG thought that the circumstances of a particular grant program warranted special conditions, he had authority to impose such special conditions.

**4.** Los Angeles is also wrong to suggest (Br. 43-45) that all of the other special conditions associated with Byrne JAG grants, such as information-technology requirements, ER17 (¶¶ 28-29); protections for human-research subjects, *id.* (¶ 31); restrictions on the purchase of certain military-style equipment, ER21-22 (¶¶ 45-50); requirements regarding body-armor purchases, ER20 (¶¶ 39-41); and training requirements, ER18 (¶¶ 34-35), are authorized by other statutory and regulatory provisions and thus justified by the requirement that Byrne JAG applicants comply with "applicable Federal laws," 34 U.S.C. § 10153(a)(5)(D). Br. 44. The City provides no explanation linking the conditions to the statutes cited.

For example, the conditions restricting the purchase of certain military-style equipment, ER21-22 (¶¶ 45-50), go beyond the restrictions on "vehicles" and "luxury items" contained in 34 U.S.C. § 10152(d). Similarly, the codification of certain conditions relating to body armor in 2016, *see* 34 U.S.C. § 10202(c)(1)(B), (C), occurred *only after* the AAG imposed them as special conditions in 2012. And the AAG has

9

imposed an "American-made" requirement for body-armor purchases, which Congress has not chosen to codify. ER20 (¶ 41).

Contrary to the City's suggestion (Br. 43-44) that the Department's invocation of Section 10102(a)(6) is of recent vintage, these conditions demonstrate that the AAG has long relied on that authority to impose a variety of special conditions not otherwise authorized by statute. The City cannot account for the AAG's past adoption of these special conditions, and, as noted above, the general invocation of the Byrne JAG statute would not be sufficient to provide explanation. And none of these special conditions has ever been questioned by Congress or challenged as *ultra vires* by a grant recipient, including Los Angeles.

Additional provisions in the Byrne JAG statute underscore that the AAG has statutory authority to impose the notice and access special conditions. *See* US Br. 12. The Attorney General may "reasonably require" "programmatic" information about the funded program, 34 U.S.C. § 10153(a)(4), and demand "appropriate coordination with affected agencies," *id.* § 10153(a)(5)(C). The City's analysis of Section 10153(a) (Br. 30-32) is premised on limitations that are absent from the statutory text, and this Court should reject the City's atextual limitations in favor of the Department's interpretation of the statute it is charged with administering.[1]

---

[1] The City contends (Br. 29-30) that this argument is new, but the provisions were cited in the district court filings, *see* ECF No. 86, at 6, and support the Department's fundamental point that the statutory context provides clear evidence that

In particular, the City emphasizes (Br. 30) that the notice condition requires information be given to an agency other than the Department, but nothing in Section 10153(a)(4) limits what agencies the Department can "reasonably require" receive the "report." 34 U.S.C. § 10153(a)(4). On the City's theory, the Department could not require grant recipients to share information with the U.S. Treasury even if such information was necessary to making the grant award payments. Nor is there any textual basis to conclude that information about release dates is not "programmatic" where it does not relate to the jurisdiction's "tailored solution" (Br. 30) to its criminal justice needs. The better reading of the provision is that the "programmatic" information references those programs listed in 34 U.S.C. § 10152(a)(1), including "law enforcement programs" and "corrections programs."

Likewise, the City has no textual basis for its assertion that the "coordination" referred to in Section 10153(a)(5)(C) is limited only to the grant proposal. It suggests (Br. 30-31) that Congress's use of the "present-perfect" tense of "has been" acts as a limit, but that would mean that even if the recipient made clear that it intended to end any coordination immediately after the grant was awarded, the Department would not be able to take that into account. That cannot be what Congress intended. And

---

Congress intended the AAG to have the authority to impose conditions like the notice and access conditions. In any event, this Court should not ignore the authority granted to the AAG in Section 10153 based on the manner in which the Department's arguments were presented below. *See Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013) ("[W]e may consider new legal arguments raised by the parties relating to claims previously raised in the litigation.").

regardless, the notice and access conditions are consistent with Congress's chosen verb tense because they focus on the existence of a policy of cooperation at the time of the proposal.

Finally, at a minimum, the City errs when it construes (Br. 22) these provisions *to limit* the AAG's separate authority to impose special conditions and priority purposes. Even if this Court does not agree that Section 10153 authorizes the notice and access conditions, or at least bolsters the AAG's authority to impose the conditions, the lack of a provision specifically authorizing civil immigration conditions cannot mean that they are statutorily precluded. If that were the case, many of the other conditions and certifications that are part of the Byrne JAG program would be unlawful.

### B. The City's Other Statutory Arguments Are Meritless.

**1.** The City attempts to draw negative inferences from changes to the Byrne JAG statute that Congress has made or declined to make, but they are unavailing. First, it is unsurprising that Congress repealed a prior, specific notice condition at the same time that it conferred more general authority on the AAG to impose conditions and determine priority purposes through 34 U.S.C. § 10102(a)(6). *See* Br. 22-23; *see also* 119 Stat. at 3094, 3113. Congress provided the AAG with the flexibility to determine which conditions would be appropriate.

Second, the fact that Congress has previously considered codifying conditions similar to those at issue here also does not advance the City's argument. *See* Br. 27-28. The Supreme Court has repeatedly cautioned that failed legislative proposals are "a

particularly dangerous ground on which to rest an interpretation of a . . . statute," because "'several equally tenable inferences' may be drawn from [congressional] inaction, 'including the inference that the existing legislation already incorporated the offered change.'" *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (quoting *United States v. Wise*, 370 U.S. 405, 411 (1962)). The failed amendments offered by the City are quintessential examples of this principle at work; the proposals cited by the City do not exactly mirror the conditions at issue here, and it is equally likely that Congress rejected them because the statute already granted discretion to the AAG to enact the version of the conditions that best addressed the problem. Nor does Los Angeles advance its argument by relying on *City and County of San Francisco v. Trump*, 897 F.3d 1225, 1234 (9th Cir. 2018), which concerned the implications of legislative inaction on the question whether the President had the inherent authority to act by Executive Order under Article II of the Constitution, not on a question about the scope of statutory authorization, which is the issue here.

The prior notice condition and Congress's subsequent consideration of proposals to reinstate it in various forms are relevant only insofar as they confirm that, contrary to the City's urging, Congress considered a notice condition to be related to the purposes of the Byrne JAG grant program. Thus, the City is wrong to suggest that the notice and access conditions do not support the purposes of the Byrne JAG program to give States and localities "more flexibility to spend money for programs that work for them." Br. 27. The purpose of the program is to provide grants to States and

local governments to support criminal justice programs. *See* 34 U.S.C. § 10152. That Congress sought to give grantees flexibility in how to spend the funds does not mean that it intended to protect grantees' ability to interfere with federal law enforcement and does not make the conditions unrelated to the criminal justice purposes at the heart of the Byrne JAG program.[2]

**2.** Los Angeles misunderstands the Department's arguments when it contends (Br. 50-51) that the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, does not authorize the notice and access conditions. The Department has not relied on the INA as a source of statutory authority to impose the conditions. Rather, the conditions challenged here are authorized by the authority conferred on the AAG, which was exercised to help protect the careful balance established by Congress in the INA between local and federal law enforcement officials. It is crucial to the cooperative law enforcement framework contemplated in the INA that localities and States respond to requests for release-date information and permit federal agents to engage in voluntary interviews before releasing aliens from custody.

---

[2] Contrary to the City's suggestion (Br. 48-49), the notice and access conditions do not violate 34 U.S.C. § 10228(a), because they fall far short of exercising "direction, supervision, or control over any police force" in merely requiring the limited cooperation with federal law enforcement officials at issue here as a condition of the receipt of federal funds. Indeed, the City's argument proves far too much, in that it would appear to call into question any funding condition imposed by the Department on a State or local law enforcement entity, including those that have been imposed, unchallenged, for many years.

As explained in our opening brief, in agreeing to the notice and access conditions, applicants simply agree that their law enforcement activities will not impair the federal government's law enforcement activities against suspected or convicted criminals. The INA provides that DHS "may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment." 8 U.S.C. § 1231(a)(4)(A). But within ninety days of "the date the alien is released from detention or confinement," DHS "shall remove" an alien subject to a final order of removal. *Id.* § 1231(a)(1)(A), (B)(iii). During this removal period, DHS "shall detain" the alien, and, if the alien has a qualifying criminal history, "[u]nder no circumstance[s]" shall DHS release the alien during the removal period. *Id.* § 1231(a)(2). Similarly, when an alien is not yet subject to a final order of removal and is released from local criminal custody, DHS may execute a warrant under Section 1226(a) to arrest and detain the alien, and, if the alien has a qualifying criminal history, DHS "shall" take the alien into custody "when the alien is released," *id.* § 1226(c).

The point here is that the structure of the INA demonstrates that Congress contemplated a cooperative relationship between the States and localities and the federal government by allowing state prosecution and incarceration to take precedence and requiring that federal immigration custody commence upon the inmates' release. The challenged conditions thus do no more than seek to ensure the cooperation contemplated by that scheme. The City turns principles of federalism on their head

15

when it urges that a grant condition designed to effect such limited cooperation raises constitutional concerns. *See* Br. 51; pt. II.B, *infra*.

**3.** The City is wide of the mark in urging (Br. 46-47) that the statute must specifically authorize the notice and access conditions, invoking the reasoning of the Fourth Circuit's decision in *Virginia Department of Education v. Riley*, 106 F.3d 559 (4th Cir. 1997) (en banc) (per curiam). There, the Fourth Circuit rejected the Department of Education's construction of a statutory condition on the receipt of federal funds. In the context of a "congressional conditioning of the States' receipt of federal funds," the Court concluded that "Congress must have affirmatively imposed [the] condition in clear and unmistakable statutory terms." *Riley*, 106 F.3d at 563 (panel dissent of Luttig, J., dissenting, adopted as opinion of the Court, 106 F.3d at 560-61). Here, by contrast, the Department of Justice does not purport to interpret a condition imposed by Congress, but rather to exercise delegated statutory authority for the agency itself to impose conditions. In that context, the Supreme Court has squarely held that "Congress need not 'specifically identif[y] and proscrib[e]' each condition in the legislation." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999) (alterations in original) (citing *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 665-66 (1985)). And there is no question here that the notice and access conditions adopted by the agency are clear, and that funding recipients had notice of the conditions when deciding whether to accept the money.

## II. The Conditions Do Not Violate the Constitution or the APA.

**A.** Los Angeles does not attempt to defend the district court's conclusion that, based on its determination that the notice and access conditions exceeded the Attorney General's statutory authority, "trying to impose such conditions is a violation of the separation of powers." ER4. As explained in our opening brief, there is no support for the "proposition that every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Dalton v. Specter*, 511 U.S. 462, 472 (1994). Rather, the "distinction between claims that an official exceeded his statutory authority, on the one hand, and claims that he acted in violation of the Constitution, on the other, is . . . well established." *Id.* at 474.

Los Angeles argues instead that the notice and access conditions violate the Spending Clause and are arbitrary and capricious. Both arguments are meritless.

**B.** The City contends that the conditions violate the Spending Clause because they are not "reasonably related to Congress's articulated goal for the Byrne JAG program." Br. 53. As this Court has explained, however, the Spending Clause does not "impos[e] an exacting standard for relatedness," but instead is satisfied as long as the conditions "bear some relationship to the purpose of the federal spending." *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002) (quoting *New York v. United States*, 505 U.S. 144, 167 (1992)); *see also Kansas v. United States*, 214 F.3d 1196, 1199 (10th Cir. 2000) ("minimum rationality"). The Supreme Court "ha[s] suggested (without significant elaboration) that conditions on federal grants might be illegitimate if they are *unrelated*

17

to the federal interest in particular national projects or programs." *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (emphasis added; quotation marks omitted). The City has not identified a single case in which the Supreme Court or this Court found that the relatedness requirement was not satisfied, and it has not shown that the conditions at issue here are unrelated to the purposes of the Byrne JAG program.

The City attacks a straw man by arguing that immigration enforcement in general is not sufficiently related to local criminal justice. Br. 53-55. Even if that were correct as a general matter, the purpose of the notice and access conditions is not to promote immigration enforcement generally. It is to eliminate particular impediments to immigration enforcement created by the local law enforcement departments funded by the grants. The notice and access conditions are limited to aliens whom the City itself has taken into custody based on suspected criminal conduct, and they are designed to ensure that the City's criminal law enforcement does not obstruct federal law enforcement or endanger public safety by requiring at-large arrests in the community. The conditions ensure that local law enforcement officials that are funded by the federal law enforcement grants do not thwart the federal government's ability to remove aliens whom the grant recipient itself arrested for criminal conduct. Declining to fund jurisdictions that hinder the removal of actual, or at least suspected, criminals is plainly related to the criminal-justice purposes of the Byrne JAG program.

As noted above, the City's argument is significantly undermined by its own point that Congress previously required applicants for a predecessor to the Byrne JAG grant

18

to provide an "assurance" that the recipient would "provide without fee to the Immigration and Naturalization Service, within 30 days of the date of their conviction, notice of conviction of aliens who have been convicted of violating criminal laws of the State." Br. 22 (quoting 42 U.S.C. § 3573(a)(11) (2000), *repealed* (2006)); *see also* 119 Stat. at 3094, 3113. This provision demonstrates that Congress thought a notice condition was related to the purposes of the Byrne JAG grant program, and the condition at issue here is even more limited and more narrowly tailored to the relationship between local and federal law enforcement because it is specifically tied to the release date that is critical to the federal enforcement of immigration law.

**C.** The City also contends that the conditions are arbitrary and capricious because the Department did not make an adequate factual determination about the conditions' effect on crime. Br. 55-57. But it is sufficient under the APA's requirements for reasoned decisionmaking that the Department acted to discourage a particular practice that has an indisputably deleterious effect on the federal government's efforts to enforce the laws and poses risks to officer safety and the community. In particular, the City's actions impair federal immigration enforcement and force the federal government to attempt to take custody of aliens in the community—at risk to the officers involved and to public safety—rather than taking custody through an orderly process that does not subject the community to intrusion and potential harm. It is inherently rational to structure the Byrne JAG program in a way that permits the federal government to carry out its responsibilities under the INA in a safe and orderly manner.

Thus, even assuming that OJP's imposition of the conditions is subject to arbitrary-and-capricious review at all, notwithstanding the absence of any statutory standards governing the choice of special conditions and priority purposes adopted, *but cf. Lincoln v. Vigil*, 508 U.S. 182, 192-94 (1993), the conditions are "rational" and the district court should not "substitute its judgment" for the Department's, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983).

# CONCLUSION

The preliminary injunction should be reversed.

Respectfully submitted,

JOSEPH H. HUNT
  *Assistant Attorney General*

NICOLA T. HANNA
  *United States Attorney*

HASHIM M. MOOPPAN
  *Deputy Assistant Attorney General*

MARK B. STERN
DANIEL TENNY
KATHERINE TWOMEY ALLEN

*s/ Laura E. Myron*
LAURA E. MYRON
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4819*

DECEMBER 2018

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,007 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Laura E. Myron*
LAURA E. MYRON

**CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2018, I electronically filed the foregoing

brief with the Clerk of the Court for the United States Court of Appeals for the Ninth

Circuit by using the appellate CM/ECF system. Participants in the case are registered

CM/ECF users, and service will be accomplished by the appellate CM/ECF system.


*s/ Laura E. Myron*
LAURA E. MYRON