**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CITY OF LOS ANGELES, <br> *Plaintiff-Appellee*, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General; ALAN R. HANSON, in his official capacity as Acting Assistant Attorney General of the Office of Justice Programs; RUSSELL WASHINGTON, in his official capacity as Acting Director of the Office of Community Oriented Policing Services; UNITED STATES DEPARTMENT OF JUSTICE, <br> *Defendants-Appellants*. | No. 18-56292 <br><br> D.C. No. 2:17-cv-07215-R-JC <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted April 10, 2019
Pasadena, California

Filed October 31, 2019

Before:  Kim McLane Wardlaw, Jay S. Bybee, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta;
Concurrence by Judge Wardlaw

---

## SUMMARY[*]

### Standing / Federal Grants

The panel affirmed the district court's preliminary injunction entered against the U.S. Department of Justice ("DOJ")'s use of the notice and access conditions imposed on recipients of Edward Byrne Memorial Justice Assistance Grant Program ("Byrne JAG") formula grants.

Byrne JAG authorized the U.S. Attorney General to make grants to state and local governments for criminal justice programs.  The authorizing statute allowed the Attorney General to depart from the statutory formula award in certain circumstances.  DOJ's Office of Justice Programs imposed two new conditions for Byrne JAG funding for fiscal year 2017: the "notice condition," which required a recipient to honor the Department of Homeland Security's requests for advance notice of release times of detained aliens in the recipient's correctional facilities; and the "access condition," which required a recipient to give federal agents access to correctional facilities to meet with detained aliens, or individuals believed to be aliens.  The City of Los Angeles

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

filed this suit against DOJ, seeking an injunction against implementation of the notice and access conditions.

DOJ first argued that the notice and access conditions were within the Assistant Attorney General's authority under a 2006 amendment to § 10102(a)(6) in the Violence Against Women and Department of Justice Act of 2005. The panel rejected Los Angeles's threshold argument that Congress's amendment to § 10102(a)(6) did not give the DOJ any independent authority or power; and held that § 10102(a)(6) confirmed DOJ's authority to place "special conditions on all grants" and determine "priority purposes for formula grants." The panel held that § 10102(a)(6) did not authorize DOJ to require all recipients of Byrne JAG funding to comply with the notice and access condition. Specifically, first, the panel held that the notice and access conditions were not "special conditions" because they were not conditions triggered by specific characteristics not addressed by established conditions. Second, the panel held that priority purposes must be chosen from among the various possible purposes of a Byrne JAG award as set forth in § 10152(a). The panel concluded that because the notice and access conditions met neither of these definitions, DOJ lacked statutory authority to impose them under § 10102(a)(6). The panel agreed with sister circuits that held that § 10102(a)(6) did not give the Assistant Attorney General broad authority to impose any condition it chose on a Byrne JAG award.

The panel next rejected DOJ's argument that the propriety of the notice and access conditions were further supported by provisions in the Byrne JAG statute that authorize the Attorney General to obtain certain information and require coordination with agencies. *See* 34 U.S.C. § 10153(a)(4), (5). First, the panel held that because the Department of

Homeland Security requests for notice of the release of a
detained alien did not relate to a program funded by Byrne
JAG, the notice condition did not require "programmatic"
information under § 10153(a)(4). Second, the panel held that
§ 10153(a)(5)(C), which required a grant recipient to certify
that "there has been appropriate coordination with affected
agencies," did not give the Attorney General authority to
impose the access condition.

The panel held that because none of DOJ's proffered
bases for statutory authority gave the Attorney General or the
Assistant Attorney General the power to impose the notice
and access conditions, the conditions were ultra vires.

Judge Wardlaw concurred with the majority to the extent
that it held that the challenged immigration conditions were
not authorized by Congress, and were unlawful. Judge
Wardlaw wrote that everything else that the majority wrote
about 34 U.S.C. § 10102(a)(6) was unnecessary to the
decision, and dicta.

**COUNSEL**

Jesse Panuccio (argued), Associate Attorney General; Mark B. Stern, Daniel Tenny, Katherin Twomey Allen, Laura E. Myron, and Brad Hinshelwood, Appellate Staff; Hashim M. Mooppan, Deputy Assistant Attorney General; Nicola T. Hanna, United States Attorney; Joseph H. Hunt, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellants.

Neema T. Sahni (argued), Mitchell A. Kamin, and Mónica Ramirez Almadani, Covington & Burling LLP, Los Angeles, California; David M. Zionts, Ivano M. Ventresca, and Benjamin L. Cavataro, Covington & Burling LLP, Washington, D.C.; Michael N. Feuer, City Attorney; James P. Clark, Chief Deputy City Attorney; Leela A. Kapur, Executive Assistant City Attorney; Valerie L. Flores, Managing Senior Assistant City Attorney; Michael Dundas, Deputy City Attorney; Office of the City Attorney, Los Angeles, California; for Plaintiff-Appellee.

Margaret L. Carter and Daniel R. Suvor, O'Melveny & Myers LLP, Los Angeles, California, for Amici Curiae 20 Counties and Cities, Metropolitan Area Planning Council, and International Municipal Lawyers Association.

**OPINION**

IKUTA, Circuit Judge:

This appeal raises the question whether the Department of Justice (DOJ) can require recipients of a formula grant under the Edward Byrne Memorial Justice Assistance Grant Program (Byrne JAG), 34 U.S.C. §§ 10151–10158, to comply with Department of Homeland Security (DHS) requests for notice of a detained alien's release date and time and to allow DHS agents access to detained aliens upon request. We conclude that DOJ lacks statutory authority to impose these conditions on recipients of Byrne JAG formula grants.

I

Congress established Byrne JAG in 2006 as part of the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 1111, 119 Stat. 2960, 3094 (2006); *see also* 34 U.S.C. § 10151(b)(1). Byrne JAG authorized the Attorney General to make grants to state and local governments for "additional personnel, equipment, supplies, contractual support, training, technical assistance, and information systems for criminal justice, including for any one or more of" eight programs. 34 U.S.C. § 10152(a)(1). Under this umbrella, eight different types of "programs" can be funded, including, for example, "[l]aw enforcement programs," "[p]rosecution and court programs," and "[d]rug treatment and enforcement programs." *Id.*[1] Congress also established that the Attorney

---

[1] The eight different types of "programs" include (1) "[l]aw enforcement programs," (2) "[p]rosecution and court programs," (3) "[p]revention and education programs," (4) "[c]orrections and

General could make Byrne JAG awards for any purpose that would have been authorized under Byrne JAG's two predecessor programs, the former Edward Byrne Memorial State and Local Law Enforcement Assistance Programs (LEAP) and the Local Government Law Enforcement Block Grants Program, both of which provided funding to state and local governments for various law-enforcement-related purposes. *Id.* § 10152(a)(2); *see also id.* § 10151(b)(1).

Byrne JAG is administered by the Office of Justice Programs (OJP), a DOJ department headed by an Assistant Attorney General for OJP (referred to here as the "Assistant AG") that administers a variety of grant programs. *See id.* §§ 10101, 10110(1).[2] The Attorney General has "final authority over all functions" of OJP, including making grants. *Id.* § 10110(2). Under the Attorney General's final authority, the Assistant AG has responsibility for several grant programs, including Byrne JAG. *See id.* § 10102(a). The Assistant AG must provide criminal-justice-related information to the public and government entities, coordinate efforts between various government organizations, and fulfill a number of other specified responsibilities. *Id.*

___

community corrections programs," (5) "[d]rug treatment and enforcement programs," (6) "[p]lanning, evaluation, and technology improvement programs," (7) "[c]rime victim and witness programs," and (8) "[m]ental health programs and related law enforcement and corrections programs." 34 U.S.C. § 10152(a)(1).

[2] The actual administration of Byrne JAG is carried out by the Bureau of Justice Assistance (BJA), a component organization of OJP. By statute, a BJA director reports directly to the Assistant AG, *see* 34 U.S.C. § 10141(b), but the majority of the BJA director's authority has been transferred directly to the Assistant AG, *see* Consolidated Appropriations Act, 2000, Pub. L. No. 106-113, app. A, tit. I, 113 Stat. 1501, 1501A–20 (1999).

§ 10102(a)(1)–(5).    Additionally, the Assistant AG must
"exercise such other powers and functions as may be vested
in the Assistant Attorney General pursuant to this chapter or
by delegation of the Attorney General, including placing
special conditions on all grants, and determining priority
purposes for formula grants."  *Id.* § 10102(a)(6).

Byrne JAG is structured and administered as a formula
grant program.    In a formula grant program, Congress
appropriates a set amount of funding and specifies "how the
funds will be allocated among the eligible recipients, as well
as the method by which an applicant must demonstrate its
eligibility for that funding."    Office of Justice Programs,
*Grant Process Overview*, http://go.usa.gov/xPmkA (last
visited June 28, 2019).    Byrne JAG's statutory formula
awards fifty percent of allocated funds to states based on their
populations relative to the population of the United States,
34 U.S.C. § 10156(a)(1)(A), and the other fifty percent to
states based on their relative rates of violent crime, *id.*
§ 10156(a)(1)(B).    Once funding has been allocated to a
particular state under the formula, forty percent of that
funding is allocated to local governments within the state,[3]
while the state itself keeps sixty percent.  *Id.* § 10156(b).

The statute authorizes the Attorney General to depart
from this formula in certain circumstances.  For example, the
Attorney General can reserve up to five percent of Congress's
total allocation if deemed necessary to address a significant
increase in crime or to remedy "significant programmatic
harm resulting from operation of the formula."    *Id.*
§ 10157(b).  The Attorney General can also retain up to

---

[3] Like state applicants, local government applicants receive funding
based on their relative rates of violent crime. 34 U.S.C. § 10156(d)(2)(A).

$20 million for use by the National Institute of Justice to help local governments upgrade their technology, and can withhold a separate $20 million to support local governments' antiterrorism training programs. *Id.* § 10157(a). Additionally, a number of federal statutes enacted independently of Byrne JAG provide additional grounds for withholding funds from an applicant. For instance, the Attorney General has discretion to make up to a ten percent reduction of a state's Byrne JAG award if it fails to comply with federal reporting requirements for deaths that occurred in state custody, *id.* § 60105(c)(2), and must reduce a state's award by ten percent if it fails to "substantially implement" the Sex Offender Registration and Notification Act, *id.* § 20927(a).

State and local governments must submit an application for Byrne JAG funding to the Attorney General, who has discretion to dictate the application's form. *Id.* § 10153(a). Some requirements for the application are set out by statute. The application must include specified certifications and assurances, including assurances that the applicant will maintain and report "data, records, and information (programmatic and financial) as the Attorney General may reasonably require," *id.* § 10153(a)(4), and a certification "made in a form acceptable to the Attorney General" that the program to be funded meets Byrne JAG's requirements, the application's information is correct, "there has been appropriate coordination with affected agencies," and the applicant will comply with all applicable federal law, *id.* § 10153(a)(5). Additionally, applicants must submit a "comprehensive Statewide plan" revealing how Byrne JAG funds "will be used to improve the administration of the criminal justice system." *Id.* § 10153(a)(6).

The Attorney General develops and issues rules to carry out the grant program, *id.* § 10155, and is also responsible for receiving and reviewing applications, *id.* § 10154. Pursuant to these program development responsibilities, the Attorney General has developed a grant award document that includes a long list of requirements and conditions not spelled out in the Byrne JAG statute itself. The grant award document warns recipients that the funding is "subject to such conditions or limitations as are set forth on the attached page(s)." The conditions listed in the grant award document vary from year to year and typically cover a wide variety of subject matter. For example, grant award documents have required recipients to meet specified information sharing and information technology systems requirements, to comply with specified policies relating to human research subjects, and to participate in various training events, technical assistance events, and conferences. Other conditions have related more directly to the use of Byrne JAG funds. For instance, the grant award document provides that recipients can purchase only certain types of body armor with Byrne JAG funds. The Attorney General must comply with general requirements for managing grants, *see* 2 C.F.R. § 2800.101, including "administrative requirements, cost principles and audit requirements," *id.* § 200.100(a)(1).

II

OJP imposed two new conditions for Byrne JAG funding for fiscal year 2017, both of which were included in the grant award documents. The first new condition, referred to as the "notice condition," required a recipient to honor DHS's requests for advance notice of the scheduled release date and time of any detained alien held in the recipient's correctional

facilities.[4]   The second new condition, referred to as the "access condition," required a recipient to give federal agents access to correctional facilities to meet with detained aliens, or individuals believed to be aliens.[5]

---

[4] The notice condition provides:

> With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award – . . . A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that, when a local-government (or local-government-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and – as early as practicable . . . – provide the requested notice to DHS.

[5] The access condition provides:

> With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award – A local ordinance, -rule, -regulation, -policy, or -(or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given access a local-government (or local-government-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

The grant award document stated that these conditions were "an authorized and priority purpose of" the Byrne JAG award and applied "[w]ith respect to the 'program or activity' that is funded" by the award.[6]   The document defined "program or activity" by reference to Title VI, a federal civil rights law prohibiting discrimination on the basis of race, color, or national origin in any federally assisted program or activity.  42 U.S.C. § 2000d-4a.  In this context, Congress defined "program or activity" to mean, in relevant part, "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government," or of "the entity of such State or local government that distributes such assistance and each such department or agency . . . to which the assistance is extended."  *Id.* § 2000d-4a(1)(A)–(B).  Finally, the 2017 Byrne JAG award document stated that "[f]ailure to comply with any one or more of these award requirements" can result in loss of funding.

The City of Los Angeles applied for a Byrne JAG award for the 2017 fiscal year.  Its application included a letter from

---

[6] The grant award document states:

> Compliance with these requirements is an authorized and priority purpose of this award.  To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) of – (1) developing and putting into place statutes, ordinances, rules, regulations, policies, and practices to satisfy this condition, (2) permitting access as described in [the access condition], and (3) honoring any request from DHS that is encompassed [in the notice condition].

its deputy mayor stating that Los Angeles "is withholding any commitment to, or confirmation of, its compliance with" the notice and access conditions. On September 29, 2017, Los Angeles filed suit against DOJ, seeking an injunction against implementation of the notice and access conditions. In connection with this lawsuit, Los Angeles stated it had a policy against cooperating with federal immigration enforcement on the ground that "being perceived as a 'cooperating' jurisdiction in the view of the current Administration would harm public safety in Los Angeles" because it would have a negative impact on police relationships with immigrant communities.

Following a brief stay pending the Seventh Circuit's affirmance and subsequent en banc vacatur of a nationwide injunction against the notice and access conditions, *see City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018), *reh'g en banc granted in part, opinion vacated in part*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018), *vacated*, No. 17-2991, 2018 WL 4268814 (7th Cir. Aug. 10, 2018), the district court entered a preliminary injunction against DOJ's use of the notice and access conditions on September 13, 2018. DOJ appealed, arguing that the district court erred in determining that Los Angeles was likely to succeed on the merits of its claim that DOJ lacked statutory authority to impose the notice and access conditions.

III

We review the district court's grant of a preliminary injunction for an abuse of discretion, and we review its determination of the underlying legal principles de novo. *See DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir.

2011).[7]  When an agency is charged with administering a congressional statute, "both [its] power to act and how [it is] to act [are] authoritatively prescribed by Congress." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013).  An agency "literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

DOJ advances two possible bases for its statutory authority to introduce the notice and access conditions.

## A

DOJ first argues that the notice and access conditions are within the Assistant AG's authority under a 2006 amendment to § 10102(a)(6) enacted by Congress in the Violence Against Women and Department of Justice Reauthorization Act of 2005, § 1152, 119 Stat. at 3113.[8]

---

[7] Although DOJ has stated that it will not enforce the notice and access conditions while this litigation is pending, *see* Office of Justice Programs, FY 2017 and FY 2018 JAG Award Special Notices, https://ojp.gov/funding/Explore/LegalNotices-AwardReqts.htm  (last visited June 26, 2019), such temporary restraint does not amount to a voluntary cessation of DOJ's enforcement of the challenged conditions. *See Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018).  Therefore, this case is not moot.

[8] Section 10102 is contained in subchapter I of chapter 101. This subchapter creates OJP, which oversees the management of all grant programs, both formula and discretionary, including Byrne JAG. (Byrne JAG is contained in subchapter V of the same chapter.) Section 10102(a) provides:

The Assistant Attorney General shall –

From its enactment in 1984 and through 2005, § 10102(a)(6) provided that the Assistant AG shall "exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this title or by delegation of the Attorney General." *See* Joint Resolution, Pub. L. No. 98-473, § 102, 98 Stat. 1837, 2078 (1984). In 2006, Congress amended § 10102(a)(6) to add the phrase

---

(1) publish and disseminate information on the conditions and progress of the criminal justice systems;

(2) maintain liaison with the executive and judicial branches of the Federal and State governments in matters relating to criminal justice;

(3) provide information to the President, the Congress, the judiciary, State and local governments, and the general public relating to criminal justice;

(4) maintain liaison with public and private educational and research institutions, State and local governments, and governments of other nations relating to criminal justice;

(5) coordinate and provide staff support to coordinate the activities of the Office and the Bureau of Justice Assistance, the National Institute of Justice, the Bureau of Justice Statistics, the Office for Victims of Crime, and the Office of Juvenile Justice and Delinquency Prevention; and

(6) exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants.

34 U.S.C. § 10102(a).

"including placing special conditions on all grants, and determining priority purposes for formula grants" at the end of the section. *See* Violence Against Women and Department of Justice Reauthorization Act of 2005, § 1152, 119 Stat. at 3113. Accordingly, § 10102(a)(6) now provides that the Assistant AG must "exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants." 34 U.S.C. § 10102(a)(6). DOJ argues that by amending the statute, Congress gave the Assistant AG the authority to impose notice and access conditions as "special conditions" on Byrne JAG awards and to announce the Attorney General's determination that such conditions are "priority purposes" of the awards.

Before considering DOJ's claim, we first address Los Angeles's threshold argument that Congress's amendment to § 10102(a)(6) does not give the DOJ any independent authority or power. Rather, Los Angeles claims, the statute merely describes the Assistant AG's ability to exercise authority specified elsewhere in the relevant chapter (Chapter 101 of title 34). We disagree. Los Angeles has not identified (and we have not found) any language in the chapter giving the Attorney General or the Assistant AG authority to place "special conditions" or determine "priority purposes" for grants.[9] But by amending § 10102(a)(6), Congress

---

[9] Neither of the sections cited by Los Angeles gives the Assistant AG authority to place "special conditions" on or determine "priority purposes" for any grants. Section 10142(2) provides that the BJA may allocate grants "on terms and conditions determined by the [BJA] Director to be consistent with part B of subchapter V [Discretionary Grants]", 34 U.S.C.

affirmatively indicated its understanding that the Assistant AG's powers and functions could include "placing special conditions on all grants, and determining priority purposes for formula grants." 34 U.S.C. § 10102(a)(6). Therefore, Los Angeles's interpretation deprives the 2006 amendment to § 10102(a)(6) of any meaning; in effect, we would have to conclude that Congress amended § 10102(a)(6) for the purpose of expressly authorizing the Assistant AG to exercise certain powers that do not exist. We decline to do so, because we presume Congress makes amendments with purpose, *see Stone v. INS*, 514 U.S. 386, 397 (1995), and it is generally "our duty to give effect, if possible, to every clause and word of a statute," *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (internal quotation marks omitted). Accordingly, we reject Los Angeles's construction of the statute. Consistent with Congress's amendment, we read § 10102(a)(6) as confirming the authority of DOJ to place "special conditions on all grants" and determine "priority purposes for formula grants."

On the other hand, we also disagree with DOJ's argument that its notice and access conditions place "special conditions" on Byrne JAG awards and announce the Attorney General's determination that such conditions are "priority purposes" of the awards. To address this claim, we must first interpret the terms "special conditions" and "priority purposes" in § 10102(a)(6). "Canons of statutory construction help give meaning to a statute's words. We

---

§ 10142(2), and § 10446(e)(3) provides that "[i]n disbursing grants under this subchapter [Grants to Combat Violent Crimes Against Women], the Attorney General may impose reasonable conditions on grant awards to ensure that the States meet statutory, regulatory, and other program requirements," *id.* § 10446(e)(3).

begin with the language of the statute." *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003) (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56 (1987)). Where the statute does not define the relevant terms, we give them "their ordinary, contemporary, common meaning," and "may consult dictionary definitions." *Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cty.*, 627 F.3d 1268, 1270 (9th Cir. 2010) (internal quotation marks and citations omitted). In construing specific words in a statute, we must also look to the "language and design of the statute as a whole," *K Mart Corp. v. Cartier, Inc*., 486 U.S. 281, 291 (1988), and read the specific words "with a view to their place in the overall statutory scheme." *Wilderness Soc'y*, 353 F.3d at 1060 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)); *see also United States v. Lewis*, 67 F.3d 225, 228–29 (9th Cir. 1995) ("Particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme."). In every case, "it is the intent of Congress that is the ultimate touchstone." *Arizona v. United States*, 567 U.S. 387, 453 (2012) (Alito, J., concurring in part and dissenting in part) (internal quotation marks omitted).

The term "special conditions" is not defined in the statute. Under the dictionary definition, the term "special" means "unusual" or "extraordinary," *Special*, Black's Law Dictionary (9th ed. 2009), or "assigned or provided to meet a particular need not covered under established procedures," *Special*, Webster's New Int'l Dictionary (3d ed. 2002). As this definition of "special" suggests, a "special condition"

would be applied "to meet a particular need" for carrying out a program that is not covered by established requirements.[10]

This interpretation of "special conditions" is consistent with the regulatory backdrop against which Congress enacted both § 10102(a)(6)'s "including" clause and the Byrne JAG statutes. *See* Violence Against Women and Department of Justice Reauthorization Act of 2005, § 1152, 119 Stat. at 3113. At the time, a regulation setting out "administrative requirements for grants and cooperative agreements to State and local governments" provided a definition of the term "special conditions." *See* 28 C.F.R. § 66.12 (2006). The regulation, titled "[s]pecial grant or subgrant conditions for 'high-risk' grantees," provided that if a grantee was "high-risk," then "special conditions and/or restrictions shall correspond to the high risk condition and shall be included in the award." *Id.* § 66.12(a)(5). A grantee could be deemed high risk if it had a history of noncompliance with grant requirements, financial stability issues, or other factors that suggested a propensity toward violation of a grant's terms. *Id.* § 66.12(a). According to the regulation, "[s]pecial conditions or restrictions may include (1) [p]ayment on a reimbursement basis; (2) [w]ithholding authority to proceed to the next phase until receipt of evidence of acceptable performance within a given funding period; (3) [r]equiring additional, more detailed financial reports; (4) [a]dditional project monitoring; (5) [r]equiring the grantee or sub-grantee

---

[10] The distinction between "special conditions" and established conditions arises in other contexts, as well. For example, the Federal Aviation Administration is empowered to issue a special condition—"a regulation that applies to a particular aircraft design"—when a design's novel features take it outside the scope of otherwise appropriate safety regulations. 14 C.F.R. § 11.19.

to obtain technical or management assistance; or (6) [e]stablishing additional prior approvals." *Id.* § 66.12(b). Additionally, the regulation required the awarding agency to inform the grantee of the reasons for the special conditions and identify corrective actions the grantee could take to have the special conditions removed. *Id.* § 66.12(c).

This regulatory meaning of "special conditions" is presumed to have informed Congress's use of the term in § 10102(a)(6). *See FAA v. Cooper*, 566 U.S. 284, 292 (2012) ("[W]hen Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." (internal quotation marks omitted)). This conclusion is supported by Congress's use of this term in a different provision, § 10109, in the subchapter of the statutes establishing OJP and Byrne JAG, enacted at the same time Congress established Byrne JAG and amended § 10102(a)(6). In § 10109, Congress provided that an Office of Audit, Assessment, and Management within the OJP would assess and review OJP's grant programs to ensure compliance with program terms and requirements. *See* 34 U.S.C. § 10109(a), (b). When conducting such an audit, the auditing office must "take special conditions of the grant into account and consult with the office that issued those conditions to ensure appropriate compliance." *Id.* § 10109(a)(2).[11] This usage

---

[11] Section 10109(a)(2) provides, in full:

> The purpose of the Office shall be to carry out and coordinate program assessments of, take actions to ensure compliance with the terms of, and manage information with respect to, grants under programs covered by subsection (b). The Director shall take special conditions of the grant into account and consult

indicates that "special conditions" were understood to be individualized requirements included in a specific grant, as set forth in 28 C.F.R. § 66.12(a)(5) (2006).  Otherwise, the auditor would not need to identify the office that issued the condition and engage in consultation on the compliance requirements.

Under the "normal rule of statutory construction," we presume that "identical words used in different parts of the same act are intended to have the same meaning."  *Dep't of Revenue of Or. v. ACF Indus.*, 510 U.S. 332, 342 (1994) (internal quotation marks omitted).  Accordingly, we may presume that Congress intended the use of "special conditions" in § 10102(a)(6) to have the same meaning as it has in § 10109(a)(2), namely to refer to individualized requirements.  Therefore, the inclusion of "placing special conditions on all grants" in § 10102(a)(6) refers to the power to impose tailored requirements when necessary, such as when a grantee is "high-risk" pursuant to 28 C.F.R. § 66.12(a)(5) (2006).**[12]**

We next consider the term "priority purposes."  34 U.S.C. § 10102(a)(6).  The Byrne JAG statute establishes that the "purpose" of an award is to "provide additional personnel, equipment, supplies, contractual support, training, technical

with the office that issued those conditions to ensure appropriate compliance.

34 U.S.C. § 10109(a)(2).

**[12]** Congress contemplated that the Assistant AG could place such conditions on both formula and discretionary grants ("all grants"), but may determine priority purposes only "for formula grants."  34 U.S.C. § 10102(a)(6).

assistance, and information systems for criminal justice," within various programs proposed by applicants. *Id.* § 10152(a)(1). The purposes set forth in the predecessor grant statutes, LEAP and the Local Government Law Enforcement Block Grants Program, include funding "additional personnel, equipment, training, technical assistance, and information systems" for local government criminal justice programs, Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 501(b), 102 Stat. 4181, 4329, and funding for purposes including hiring additional officers, establishing drug courts, and setting up task forces consisting of local government and federal law enforcement officials "to prevent and control crime," among others. H.R. 728, 104th Cong. § 101(a)(2) (1995); *see also* Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, tit. 1, 110 Stat. 1321, 1321–12 (incorporating H.R. 728 by reference). None of the purposes set forth in § 10152(a)(1) or the predecessor grant statutes corresponds to DOJ's requirement that the recipient honor DHS's requests for advance notice of detained aliens' release dates or allow federal agents access to correctional facilities to meet with detained aliens.

In light of our interpretation of "special conditions" and "priority purposes," it is clear that § 10102(a)(6) does not authorize DOJ to require all recipients of Byrne JAG funding to comply with the notice and access conditions.[13] First, the notice and access conditions are not "special conditions" because they are not conditions triggered by specific characteristics not addressed by established conditions, as

---

[13] Therefore, contrary to the concurrence's characterization of our holding, we do not adopt DOJ's interpretation of § 10102(a)(6). Concurrence at 40–41.

was the case for high-risk grantees under 28 C.F.R. § 66.12(a)(5) (2006). Second, priority purposes must be chosen from among the various possible purposes of a Byrne JAG award as set out in § 10152(a). The notice and access conditions are not included as purposes of the Byrne JAG award, nor are they purposes of either of its predecessor grant statutes. Because the notice and access conditions meet neither of these definitions, DOJ lacked statutory authority to impose them under § 10102(a)(6). Therefore, we reject DOJ's argument that § 10102(a)(6) gives it the authority to impose the notice and access conditions.

Because we interpret the terms "special conditions" and "priority purposes" narrowly, we agree with our sister circuits that § 10102(a)(6) does not give the Assistant AG broad authority to impose any condition it chooses on a Byrne JAG award. *City of Philadelphia v. Attorney Gen. of U.S.*, 916 F.3d 276, 288 (3d Cir. 2019) (concluding that Congress would not hide "such a broad power—the power to place *any* special conditions on all grants—in a statute outlining ministerial duties for an Assistant Attorney General"); *City of Chicago*, 888 F.3d at 286. Such a broad interpretation would be antithetical to the concept of a formula grant, *see City of Chicago*, 888 F.3d at 285 (noting that "the notion of the broad grant of authority to impose any conditions on grant recipients is at odds with the nature of the Byrne JAG grant, which is a formula grant rather than a discretionary grant"), and it would render superfluous Congress's carefully prescribed conditions under which the Attorney General can normally withhold Byrne JAG funding, *see, e.g.*, 34 U.S.C. § 10157(b) (allowing the Attorney General to withhold up to five percent of total allocated Byrne JAG funds to address rapid crime increases or "significant programmatic harm" caused by the normal operation of the funding formula); *id.*

§ 30307(e)(2) (providing that a state will lose five percent of any grant award made under title 34, including Byrne JAG, if it fails to comply with the national standards set out under the Prison Rape Elimination Act).[14]

In opposition to our interpretation of § 10102(a)(6), the concurrence constructs a strawman argument. It ignores our actual interpretation of § 10102(a)(6), and instead accuses us of adopting a "sweeping characterization" of DOJ's authority, Concurrence at 44, that allows the "essentially limitless" imposition of any conditions desired, Concurrence at 44–45 (quoting *City of Chicago*, 888 F.3d at 287). Based on this strawman argument, the concurrence then accuses us of creating a split with our sister circuits, which have rejected such a broad interpretation. Concurrence at 30, 34–36, 37–38, 42, 44.

While the concurrence has an easy time battering its strawman, the concurrence fails to explain how our actual ruling, that DOJ has the limited authority to impose special conditions designed to meet needs for carrying out the Byrne JAG program, could abrogate or "subvert" Byrne JAG's funding scheme. Concurrence at 44. Nor does the concurrence explain how our actual ruling is contrary to our sister circuits, which did not need to consider the viability of a narrowing construction when considering challenges to DOJ's notice and access conditions. Rather, given the issues

---

[14] Moreover, it is unlikely that Congress would recognize such a broad power in § 10102(a)(6), given the ministerial duties described in the rest of the section. *See City of Philadelphia*, 916 F.3d at 288; *City of Chicago*, 888 F.3d at 285. By contrast, our more circumscribed understanding of the power to impose special conditions and determine priority purposes is in accord with the other administrative duties outlined in § 10102.

raised by the appeals before them, our sister circuits merely rejected DOJ's argument—and the concurrence's strawman—that § 10102(a)(6) gives broad authority to impose *any* conditions DOJ may choose. The Seventh Circuit expressly acknowledged that "special conditions" may be a term of art that "cannot be read as an unbounded authority to impose 'any' conditions generally," as we have concluded, but declined to address that potential interpretation of the term. *City of Chicago*, 888 F.3d at 285 n.2. Rather, it merely rejected DOJ's argument "that the 'including clause' itself is a stand-alone grant of authority to the Assistant Attorney General to attach any conditions to any grants . . . ," and it concluded that § 10102(a)(6) did not give "sweeping power to impose *any* conditions on *any* grants." *Id*. at 285; *see also* Concurrence at 37–38. Similarly, the Third Circuit considered the argument that § 10102(a)(6) conferred "a broad power—the power to place *any* special conditions on *all* grants" on the Assistant AG, "a sweeping grant of authority." *City of Philadelphia*, 916 F.3d at 288; *see also* Concurrence at 37–38. In rejecting this broad interpretation, the court did not have occasion to consider whether the Attorney General possessed, and therefore could delegate through § 10102(a)(6), the more modest power to impose special conditions and designate priority purposes as we understand those terms. *See id*. at 287. Given our agreement with our sister circuits that § 10102(a)(6) does not confer broad authority on the Assistant AG sufficient to effectively abrogate the formula grant program Congress has established, the concurrence is wrong to suggest we are creating a circuit split. Concurrence at 30.[15]

---

[15] The concurrence's disagreement with our interpretation of § 10102(a)(6) does not make it dicta. Concurrence at 30, 40–41, 45. "[W]here a panel confronts an issue germane to the eventual resolution of

We conclude that the 2006 amendment to § 10102(a)(6) confirms that the Attorney General and the Assistant AG through delegation have the authority to impose special conditions on all grants and determine priority purposes for formula grants, as those terms are properly circumscribed. The notice and access conditions are not special conditions placed on grants to grantees that exhibit certain risk factors or have idiosyncratic issues that must be addressed individually. Nor are they among the statutorily recognized purposes of a Byrne JAG award as set out in § 10152(a). Therefore, DOJ lacked statutory authority to impose them under § 10102(a)(6).

B

We next consider DOJ's argument that the propriety of the notice and access conditions are further supported by provisions in the Byrne JAG statute that authorize the Attorney General to obtain certain information and require coordination with agencies. *See* 34 U.S.C. § 10153(a)(4),

---

the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes law of the circuit, regardless of whether doing so is necessary in some strict logical sense." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004) (quoting *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc) (opinion of Kozinski, J.)). Only "statements made in passing, without analysis, are not binding precedent." *In re Magnacom Wireless, LLC*, 503 F.3d 984, 993–94 (9th Cir. 2007). In order to resolve the issue on appeal here, we must construe § 10102(a)(6) to determine whether it gave DOJ any authority at all, and if so, whether it gave DOJ authority to impose the notice and access conditions. Our construction of the statutory language, which leads us to conclude that § 10102(a)(6) gives DOJ some circumscribed authority, but not the authority to impose the notice and access conditions, is not dicta under any definition of the term.

(5).[16]  According to DOJ, the notice condition is authorized by § 10153(a)(4), which requires a recipient to report certain programmatic information, and the access condition is authorized by § 10153(a)(5)(C), which requires a recipient to coordinate with an "affected agenc[y]."

We disagree.  First, § 10153(a)(4) requires the applicant to maintain and report information that is financial and "programmatic."  Although the term "programmatic" is not defined in the statute, the dictionary defines it to mean "of, resembling, or having a program."  *Programmatic*, Webster's New Int'l Dictionary (3d ed. 2002).  Section 10152 sets out types of "programs" that Byrne JAG may fund, including "[l]aw enforcement programs," "[p]revention and education programs," and "[d]rug treatment and enforcement programs."  34 U.S.C. § 10152(a)(1).  Given the use of the word "program" elsewhere in the same statutory scheme, the

---

[16]  Section 10153(a) provides that an application for Byrne JAG funding must include:

> (4) An assurance that, for each fiscal year covered by an application, the applicant shall maintain and report such data, records, and information (programmatic and financial) as the Attorney General may reasonably require.

> (5) A certification, made in a form acceptable to the Attorney General and executed by the chief executive officer of the applicant . . . that –

> . . .

>> (C) there has been appropriate coordination with affected agencies.

34 U.S.C. § 10153(a)(4), (5).

term "programmatic" in § 10153(a)(4) is best read to refer to a program or programs supported by Byrne JAG funding as outlined in § 10152(a)(1), such as a particular law enforcement program or drug treatment program.[17] Accordingly, § 10153(a)(4) merely requires an applicant to maintain and report information relating to the programs funded by a Byrne JAG award.  Because DHS requests for notice of the release of a detained alien do not relate to a program funded by Byrne JAG, the notice condition does not require "programmatic" information under § 10153(a)(4).

Moreover, the statute speaks of the maintenance and reporting of data, records, and information "for each fiscal year covered by an application," *id.* § 10153(a)(4), which contemplates yearly reporting.  The notice condition's requirement that a recipient have a policy in place requiring the provision of information to DHS on an ad hoc basis—due whenever DHS requests—is inconsistent with this statutory language.

Second, § 10153(a)(5)(C), which requires a grant recipient to certify that "there has been appropriate coordination with affected agencies," does not give the Attorney General authority to impose the access condition. In context, this section requires the grant recipient to certify that it has coordinated with the agencies affected by the program to be funded by the Byrne JAG award.  This

---

[17] To the extent DOJ argues that "programmatic" should be read as referring to the definition of "program" set out in 42 U.S.C. § 2000d-4a(1)(A), we disagree.  The definition of "program" from federal civil rights law that was incorporated by reference in the 2017 Byrne JAG award letter is not a reasonable interpretation of the word "program" or "programmatic" as used in the statutes authorizing Byrne JAG awards.

statutory language does not support DOJ's interpretation that a recipient must coordinate with DHS agents who are not part of a funded program. Nor does the statutory language (which requires an applicant to certify that "there *has* been appropriate coordination") impose an ongoing obligation on the applicant to coordinate with DHS agents throughout the life of the grant, as required under the access condition. *Id.* § 10153(a)(5)(C) (emphasis added). Therefore, the access condition is not a proper exercise of the Attorney General's authority under § 10153(a)(5)(C).

\* \* \*

Because none of DOJ's proffered bases for statutory authority gives the Attorney General or the Assistant AG the power to impose the notice and access conditions, the conditions are ultra vires. *See City of Arlington*, 569 U.S. at 297. We affirm the district court.[18]

**AFFIRMED.**

WARDLAW, Circuit Judge, concurring in the judgment:

We are faced once again with "the Trump Administration's efforts to press state and local police into federal immigration enforcement," *City of Los Angeles v. Barr*, 929 F.3d 1163, 1183 (9th Cir. 2019) (Wardlaw, J., dissenting), this time via an ultra vires attempt to divert

---

[18] Because we affirm the district court on the ground that DOJ lacked statutory authority to impose the notice and access conditions, we need not address Los Angeles's alternative arguments raised on appeal.

Edward Byrne Memorial Justice Assistance Grant Program
(Byrne JAG) funds from their congressionally authorized
purposes. I concur with the majority to the extent it holds
that the challenged immigration conditions were not
authorized by Congress, and are thus unlawful. But once the
majority concluded that the challenged notice and access
conditions are not lawful "special conditions" or "priority
purposes" and were thus beyond the powers granted by
Congress to the Department of Justice, it should have
stopped, as in full stop. Everything else the majority writes
about 34 U.S.C. § 10102(a)(6) is "unnecessary to the decision
in the case and [is] therefore not precedential." *Cetacean
Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004)
(alteration in original) (quoting *Best Life Assur. Co. v.
Comm'r*, 281 F.3d 828, 834 (9th Cir. 2002)). In other words,
the rest of the asides cast by the majority are dicta. In dicta,
the majority finds vague, unidentified powers bestowed upon
the DOJ in an illustrative 2006 amendment to a "duties and
functions" statute in a different subchapter of the Act that
established the Byrne JAG program. *See* Violence Against
Women and Department of Justice Reauthorization Act of
2005, Pub. L. No. 109-162, 119 Stat. 2960 (2006). This
putative power grab not only unnecessarily portends a circuit
split, its analysis also stands contrary to every other court to
have addressed the issue in a reasoned opinion.

As both the Third and Seventh Circuits have held,
Congress did not grant the Assistant Attorney General for the
Office of Justice Programs any authority independent of that
already vested by a different statute or by delegation to the
Attorney General to impose special conditions and determine
priority purposes in 34 U.S.C. § 10102(a)(6). *See City of
Philadelphia v. Attorney Gen.*, 916 F.3d 276, 287–88 (3d Cir.
2019); *City of Chicago v. Sessions*, 888 F.3d 272, 284–87

(7th Cir.), *vacated in part on other grounds*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018). The majority at best misperceives, and at worst, falsely characterizes, these holdings, describing them as rejecting only a "broad interpretation" of § 10102(a)(6) as authorizing the DOJ to impose "any condition it chooses on a Byrne JAG award." Majority Op. at 23. But our sister circuits plainly rejected the notion that § 10102(a)(6) provides *any* independent grant of authority, broad or narrow—a conclusion that the majority suggests is incorrect.

As even the DOJ recognizes, "an agency literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). The DOJ "does not claim to possess inherent executive authority to impose the grant conditions, and instead recognizes that the authority must originate from Congress." *City of Chicago*, 888 F.3d at 283. Both the Third and the Seventh Circuits rejected outright the argument that the DOJ makes here, that a residual clause of § 10102, which describes the duties and functions of the Assistant Attorney General for the Office of Justice Programs, is such a congressional delegation of power. That section provides in full:

> (a) Specific, general and delegated powers
>
> The Assistant Attorney General shall—
>
> (1) publish and disseminate information on the conditions and progress of the criminal justice systems;

(2) maintain liaison with the executive and judicial branches of the Federal and State governments in matters relating to criminal justice;

(3) provide information to the President, the Congress, the judiciary, State and local governments, and the general public relating to criminal justice;

(4) maintain liaison with public and private educational and research institutions, State and local governments, and governments of other nations relating to criminal justice;

(5) coordinate and provide staff support to coordinate the activities of the Office and the Bureau of Justice Assistance, the National Institute of Justice, the Bureau of Justice Statistics, the Office for Victims of Crime, and the Office of Juvenile Justice and Delinquency Prevention; and

(6) exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, **including placing special conditions on all grants, and determining priority purposes for formula grants.**

34 U.S.C. § 10102(a) (emphasis added).[1]  The DOJ contends that the bolded language independently authorizes the Assistant Attorney General to impose any special conditions he sees fit, as to any grant administered by the Office of Justice Programs, so long as the condition is "germane" to the grant program or to "law enforcement" more generally.[2]  Practically speaking, the DOJ argues that the Assistant Attorney General for the Office of Justice Programs can impose almost any "special condition" on any grant the Office of Justice Programs administers, up to withholding all grant funds due to a grantee's failure to comply with the DOJ's desired policy.

The DOJ's interpretation of § 10102(a)(6) conflicts with the plain language of the statute.  *See Gonzales v. Oregon*, 546 U.S. 243, 258 (2006) (stating that "[t]he starting point" for the inquiry as to whether Congress delegated any authority "is, of course, the language of the [alleged] delegation provision itself").  Specifically, it "runs headlong into an obstacle: the word 'including.'"  *City of Philadelphia*, 916 F.3d at 287.  We have interpreted "including" as "ordinarily defined as a term of illustration, signifying that what follows is an example of the preceding principle."  *Ariz. State Bd. for Charter Schs. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1007 (9th Cir. 2006); *see Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term

---

[1] This statute appears in Subchapter I, Chapter 101 of Title 34 of the United States Code.  The Byrne JAG statute is in Subchapter V, Chapter 101 of Title 34.  *See* 34 U.S.C. §§ 10151–10158.

[2] See Recording of Oral Argument, *City of Los Angeles v. Barr*, No. 18-56292 (9th Cir. Apr. 10, 2019), at 6:25–7:22, http://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000015483.

'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.").[3]    Analyzing Congress's use of the word "including" in § 10102(a)(6), the Third and Seventh Circuits came to the same conclusion.  *See City of Philadelphia*, 916 F.3d at 287 (reasoning that "including" "is used to denote something that is within a larger whole"); *City of Chicago*, 888 F.3d at 284 ("The word 'including' by definition is used to designate that a person or thing is part of a particular group.").

The Seventh Circuit reasoned that the plain meaning of "including" in § 10102(a)(6)

> is to set forth a subcategory of the types of powers and functions that the Assistant Attorney General may exercise when vested in the Assistant Attorney General either by the terms of this chapter or by delegation of the Attorney General. . . . [Because the DOJ] does not even claim that the power exercised here [to impose the notice and access conditions] is authorized anywhere in the chapter, nor that the Attorney General possesses that authority and therefore can delegate it to the Assistant Attorney General . . . the [DOJ's] argument is that the "including" clause itself is a stand-alone grant of authority to the Assistant

---

[3] Dictionary definitions confirm this understanding of the word "including."  *See Include*, Webster's New Int'l Dictionary (3d ed. 2002) ("to place, list, or rate as a part of component of a whole or of a larger group, class, or aggregate"); *Including*, New Oxford Am. Dictionary (3d ed. 2010) ("containing as part of the whole being considered").

> Attorney General to attach any conditions to
> any grants in that subchapter or other
> subchapters even though that authority is not
> otherwise provided in the chapter and is not
> possessed by the Attorney General. Because
> that interpretation is so obviously belied by
> the plain meaning of the word "including," the
> Attorney General's position is untenable.

*City of Chicago*, 888 F.3d at 285. The Third Circuit agreed
that

> "including" signifies that the Special
> Conditions Clause is part of "such other
> powers and functions *as may be vested in the*
> *Assistant Attorney General pursuant to this*
> *chapter or by delegation of the Attorney*
> *General*." 34 U.S.C. § 10102(a)(6) (emphasis
> added). Therefore, under the plain text of this
> provision, the [Assistant Attorney General]
> has the power to place special conditions on
> grants only to the extent that such power has
> been vested in him or her "pursuant to this
> chapter or by delegation of the Attorney
> General." . . . [T]he broad authority [the DOJ]
> urges has not been vested in the Attorney
> General or the [Assistant Attorney General] in
> the Byrne JAG statute or anywhere else in the
> United States Code. Therefore, the Special
> Conditions Clause cannot authorize this
> power on its own.

*City of Philadelphia*, 916 F.3d at 287–88. Here, nothing in
the statute evinces a congressional intent to use the word

"including" to mean anything other than its ordinary definition.[4] All other courts to consider § 10102(a)(6) have similarly rejected the DOJ's argument that the statute independently authorizes the Assistant Attorney General to impose conditions of any kind on grants.[5]

---

[4] By contrast, in *United States v. Flores*, 901 F.3d 1150 (9th Cir. 2018), we considered a statute listing a number of aggravated felonies, 8 U.S.C. § 1101(a)(43), conviction of which rendered aliens deportable. 8 U.S.C. § 1101(a)(43)(G) listed "a theft offense (including receipt of stolen property)." Congress's express inclusion of an independent crime requiring separate elements of proof led us to conclude that it was at the least ambiguous as to whether Congress intended "including" to mean "a subset" or intended to add an independent theft-related crime to the expanded list of deportable felonies. *Flores*, 901 F.3d at 1157–58. And, as the Board of Immigration Appeals, to which we deferred under *Chevron*, noted, § 1101(a)(43)(G) "is not the only entry within 1101(a)(43)'s list of aggravated felonies [in which Congress used] the word 'including' 'to cover a broader range of offenses than those previously referenced.'" *Flores*, 901 F.3d at 1158 (quoting *Matter of Alday-Dominguez*, 27 I. & N. Dec. 48, 51 n.7 (B.I.A. 2017)).

[5] *See Oregon v. Trump*, __ F. Supp. 3d __, 2019 WL 3716932, at *11, *13–15 (D. Or. Aug. 7, 2019), *appeal docketed* No. 19-35843 (9th Cir. Oct. 4, 2019); *City of Providence v. Barr*, 385 F. Supp. 3d 160, 163–64 (D.R.I. June 10, 2019), *appeal docketed sub nom. City of Providence v. U.S. Dep't of Justice*, No. 19-1802 (1st Cir. Aug. 19, 2019); *City & County of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 947 (N.D. Cal. 2018) ("DOJ's interpretation that Section 10102 establishes an independent grant of authority to impose the challenged conditions contradicts the plain meaning of the statute."), *appeal docketed sub nom. City & County of San Francisco v. Whitaker*, No. 18-17308 (9th Cir. Dec. 4, 2018); *States of New York v. Dep't of Justice*, 343 F. Supp. 3d 213, 228 (S.D.N.Y. 2018) (holding that § 10102(a)(6) is not a "stand-alone grant of authority to the Assistant Attorney General to attach any conditions to any grants" (quoting *City of Chicago*, 888 F.3d at 285)), *appeal docketed sub nom. City of New York v. Whitaker*, No. 19-275 (2d Cir. Jan. 28, 2019); *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 874 (N.D. Ill. 2018); *City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 941–43 (N.D. Ill. 2017)

The DOJ's interpretation of § 10102(a)(6) is at odds with the very structure and purpose of § 10102. *See Gonzales*, 546 U.S. at 273 ("[S]tatutes should not be read as a series of unrelated and isolated provisions." (internal quotation marks omitted)).    Section 10102 delineates the "duties and functions" of the Assistant Attorney General for the Office of Justice Programs, much like other "duties and functions" statutes concerning persons who manage agency programs. *See, e.g.*, 34 U.S.C. § 10444 (duties and functions of Director of Violence Against Women Office), § 11293 (duties and functions of the Administrator of the Office of Juvenile Justice and Delinquency Prevention).    The first five provisions of § 10102(a) describe the Assistant Attorney General's various administrative duties, from "coordinat[ing] and provid[ing] staff support to coordinate the activities" of other DOJ offices to "maintain[ing] liaison with public and private educational and research institutions, State and local governments, and governments of other nations relating to criminal justice." *Id*. § 10102(a)(1)–(5). The sixth provision, § 10102(a)(6), is a catch-all provision, simply recognizing that the Assistant Attorney General can also exercise such other powers and functions as may be delegated by other authorities—either by Congress in Chapter 101 or by the Attorney General.   "The 'including' phrase is tacked on to that." *City of Chicago*, 888 F.3d at 285.

As all other courts have found, it is inconceivable that Congress implicitly intended to delegate any independent

---

(subsequent history omitted); *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289, 321 (E.D. Pa. 2018), *aff'd in part, vacated in part sub nom. City of Philadelphia v. Attorney Gen.*, 916 F.3d 276 (3d Cir. 2019); *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 616–17 (E.D. Pa. 2017) (subsequent history omitted).

powers in this residual clause. "A clause in a catch-all provision at the end of a list of explicit powers would be an odd place indeed to put a sweeping power to impose *any* conditions on *any* grants—a power much more significant than all of the duties and powers that precede it in the listing . . . ." *Id.* (emphasis in original); *see City of Philadelphia*, 916 F.3d at 288 ("Given the ministerial nature of the powers in the preceding five subsections, we would be hesitant to find such a sweeping grant of authority in the sixth subsection absent clear language to support that interpretation."). Congress does not hide such broad powers in such ancillary provisions. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

The DOJ's interpretation of § 10102(a)(6) also interferes with the Byrne JAG program's formula grant structure. Congress created specific, objective eligibility criteria and a formula to allocate Byrne JAG funds among all jurisdictions that meet that criteria. *See* 34 U.S.C. § 10156. Congress further crafted narrow grounds on which the Attorney General is authorized to withhold grant funds to jurisdictions not supporting specific federal priorities, *id*. §§ 10157(b), 12113(e), 20927(a), 30307(e)(2), 40914(b), 60105(c)(2), while ensuring that jurisdictions would receive a minimum grant allocation, *id*. § 10156(a)(2). Against the backdrop of Congress's precise formula and express limits on the Attorney General's ability to deviate from that formula, "it is inconceivable that Congress would have anticipated that the Assistant Attorney General could abrogate the entire distribution scheme and deny all funds to states and localities that would qualify under the Byrne JAG statutory provisions,

based on the Assistant Attorney General's decision to impose his or her own conditions—the putative authority for which is provided in a different statute." *City of Chicago*, 888 F.3d at 286.**[6]**

"Congress knew how to grant such authority, and explicitly did so in another statute within the same Act that added the 'including' language" to § 10102(a)(6). *Id.* at 286–87 (citing the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960 (2006)); *see United States v. Youssef*, 547 F.3d 1090, 1094–95 (9th Cir. 2008) (noting that Congress's omission of a term from one section and inclusion of that term in another "is evidence of Congress's expressed intent not to impose" that requirement on the first section). Congress gave the Attorney General the authority to "impose reasonable conditions on" Violence Against Women Act grants "to ensure that the States meet statutory, regulatory, and other program requirements." 34 U.S.C § 10446(e)(3). Additionally, Congress provided that the Assistant Attorney General shall establish discretionary grant programs under the Bureau of Justice Assistance, "on terms and conditions determined by the [Assistant Attorney General] to be consistent with part B of subchapter V." 34 U.S.C

---

**[6]** Indeed, the DOJ's interpretation of § 10102(a)(6) gives no weight to Congress's choice to make Byrne JAG a formula grant program. "If Congress sought to provide [the DOJ] the ability to exercise its judgment in the selection of the grantees, it would have made sense for it to do so by employing the discretionary grant model rather than the formula grant structure used here." *City of Chicago*, 888 F.3d at 286. Were § 10102(a)(6) to authorize the DOJ "to withhold all funds because a jurisdiction does not certify compliance with [a policy] of the Attorney General's choosing," it would effectively "turn[] the formula grant into a discretionary one." *City of Philadelphia*, 916 F.3d at 290.

§ 10142(2).[7]  In contrast to these explicit grants of authority to impose conditions on specific grants,

> the Byrne JAG statute provides the Attorney General authority over a carefully delineated list of actions, with no such broad authority to impose reasonable conditions.  If Congress had wanted to vest such authority in the Attorney General regarding the Byrne JAG grant, one would expect it to include explicit language in the grant statute itself, as it did in the Violence Against Women Act.  The Attorney General's argument that such sweeping authority over the major source of funding for law enforcement agencies nationwide was provided to the Assistant Attorney General by merely adding a clause to a sentence in a list of otherwise-ministerial powers defies reason.

*City of Chicago*, 888 F.3d at 287.

Yet, in dicta, unnecessary to its holding, the majority seems to adopt the DOJ's "independent power" construction of § 10102(a)(6), writing in passing that "the Attorney General and the Assistant [Attorney General for the Office of Justice Programs] through delegation have the authority to

---

[7] Congress transferred the functions of the Director of Bureau of Justice Assistance to the Assistant Attorney General for the Office of Justice Programs, with exceptions not relevant here.  *See* Consolidated Appropriations Act, 2000, Pub. L. No. 106-113, 113 Stat. 1501 (1999) (note regarding 42 U.S.C. § 3741, which was transferred to 34 U.S.C. § 10141).

impose special conditions on all grants and determine priority purposes for formula grants, as those terms are properly circumscribed." Majority Op. at 26; *see id*. at 17, 21, 24 n.14, 26 (referring to the Assistant AG's "power" to impose special conditions under § 10102(a)(6)).**[8]** *See In re Magnacom Wireless, LLC*, 503 F.3d 984, 993–94 (9th Cir. 2007) ("[S]tatements made in passing, without analysis, are not binding precedent."); *see also United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc) (opinion of Kozinski, J.) ("[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit . . . ."). While the majority characterizes its discussion as a response to a "threshold argument," it is nothing of the sort. Majority Op. at 16. All that is necessary to decide this case is the conclusion, upon which we all agree, that § 10102(a)(6) does not permit the Assistant AG to impose the notice and access conditions at issue here.

In its digression from the issue at hand, the majority places great weight on its contention that the "including" clause must have been intended as a grant of authority, or else the 2006 amendment adding the clause would have no meaning. Majority Op. at 16–17. The majority identifies no other support for its suggestion of a grant of independent powers. The majority's concern that a contrary reading of this residual clause would deprive it of meaning rings hollow,

---

**[8]** The majority never identifies any language in § 10102(a)(6), or any other statute, to support its untethered statement that § 10102(a)(6) grants the Attorney General any authority. Majority Op. at 26. While the DOJ argues that § 10102(a)(6) grants the Assistant Attorney General authority, it never suggests that this authority extends to the Attorney General.

given that the majority's interpretative dictum would render superfluous numerous statutes in which Congress expressly authorized the Attorney General to withhold a set percentage of Byrne JAG funds for a specified purpose. *See* 34 U.S.C. §§ 10157(b), 12113(e), 20927(a), 30307(e)(2), 40914(b), 60105(c)(2). As the Third Circuit noted, "[i]f Congress had already given the [Assistant] Attorney General this sweeping authority to withhold all funds for any reason [by imposing special conditions], it would have no need to delineate numerous, specific circumstances under which the Attorney General may withhold limited amounts of funds." *City of Philadelphia*, 916 F.3d at 286. We generally do not interpret such ancillary ministerial provisions to render superfluous Congress's more specific delegations of power. *See Gonzales*, 546 U.S. at 262 ("It would be anomalous for Congress to have so painstakingly described the Attorney General's limited authority to deregister a single physician or schedule a single drug, but to have given him, just by implication, authority to declare an entire class of activity outside 'the course of professional practice,' and therefore a criminal violation of the CSA."). The notion that through this "including" clause Congress granted independent authority to withhold all funds as to a specific grantee is absurd given that elsewhere Congress explicitly gave the Attorney General authority to withhold funds only in limited circumstances. *See City of Chicago*, 888 F.3d at 285 (recognizing that such "a power granted to the Assistant Attorney General . . . was not granted to the Attorney General"); *United States v. Wilson*, 503 U.S. 329, 334 (1992) (noting that statutory interpretation that leads to absurd results is to be avoided).

In contrast, interpreting the "including" clause to illustrate powers already vested in the Assistant Attorney General or the Attorney General is consistent with Congress's precise

grants of power over the Byrne JAG program to the Attorney General. And, as the City identified, various statutes in Chapter 101 of Title 34 authorize the Attorney General or the Assistant Attorney General to impose terms and conditions on other grants. *See, e.g.*, 34 U.S.C. §§ 10142(2), 10446(e)(3). The authority to impose conditions clearly includes the authority to impose special conditions.[9] Thus, § 10102(a)(6) makes clear that the Attorney General can delegate such authority to the Assistant Attorney General, and that exercising such authority is part of the Assistant Attorney General's "duties and functions." This interpretation satisfies "our duty 'to give effect, if possible, to every clause and word of a statute,' rather than to emasculate an entire section." *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (citation omitted). That the "including" clause may simply "remove doubt" that the Assistant Attorney General can, under some circumstances, impose special conditions and determine priority purposes does not render the clause meaningless. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) (concluding that "the phrase 'and costs' would not be superfluous if Congress included it to remove doubt that defendants may recover costs" under the circumstances set forth in the statute). Even if this interpretation makes Congress's addition of the "including" clause to § 10102(a)(6) somewhat redundant, the addition of incidental language with little meaning does not demonstrate intent to grant the Assistant Attorney General sweeping authority to impose special conditions on all Office of Justice Program-

---

[9] Because other statutes in Chapter 101 provide the DOJ with authority to impose special conditions, the majority is simply wrong to contend that the City of Los Angeles's reading of the "including" clause would "authoriz[e] the Assistant AG to exercise certain powers that do not exist." Majority Op. at 16–17.

administered grants. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("Redundancies across statutes are not unusual events in drafting . . . ."). The majority fails to confront the ancillary nature of the "including" clause.

The majority's drift is pernicious because the distinction it seemingly draws is between special conditions imposed on individual Byrne JAG grantees, which it suggests are lawful, as opposed to conditions imposed on all grantees, which are not. *See, e.g.*, Majority Op. at 22 ("[Section] 10102(a)(6) does not authorize DOJ to require *all recipients* of Byrne JAG funding to comply with the notice and access conditions."). This sweeping characterization is far from a "narrowing construction." Majority Op. at 24. It would subvert Congress's carefully crafted statutory scheme for federal law enforcement grants.

The majority protests that it is only recognizing the DOJ's "limited authority to impose special conditions designed to meet the needs for carrying out the Byrne JAG program." Majority Op. at 24. But what are the limits of that authority? Beyond stating nebulously that "special conditions" refer to "individualized requirements" created in response to "certain risk factors" or "idiosyncratic issues," the majority provides no further guidance.[10] Majority Op. at 21, 26. It therefore opens the door for the Assistant Attorney General to lay down any number of conditions not contemplated or authorized by Congress, as long as they are imposed on an individual basis

---

[10] While the majority suggests that Congress's use of the term "special conditions" was informed by a since-repealed regulation, 28 C.F.R. § 66.12(a)(5) (2006), Majority Op. at 19–21, it conspicuously does not limit the Assistant Attorney General to imposing only the types of conditions provided for by that regulation.

and can somehow be said to be "designed to meet the needs for carrying out the Byrne JAG program." This essentially limitless authority "is a tremendous power of widespread impact," and, again, "is not the type of authority that would be hidden in a clause without . . . explanation, [or] without any reference or acknowledgment of that authority in the statute that actually contains the grant itself." *City of Chicago*, 888 F.3d at 287.

The Byrne JAG program is the primary provider of federal criminal justice funding to state and local governments.[11] Congress's articulated goal for Byrne JAG grants was to provide States and localities with flexibility to address their local criminal justice needs, specifically through funds for "additional personnel, equipment, supplies, contractual support, training, technical assistance, and information systems for criminal justice." 34 U.S.C. § 10152(a)(1); *see also* H.R. Rep. No. 109-233, at 89 (2005) (stating that the new Byrne JAG program was meant to "give State and local governments more flexibility to spend money for programs that work for them"). The majority's dicta, if it were to become law, would allow any Assistant Attorney General for the Office of Justice Programs to set special conditions or funding priorities on specific grantees, thus thwarting Congress's mandate and furthering its own desired policy goals. This supposed power could be wielded over all congressionally enacted grants administered by the Office of

---

[11] *See* Edward Byrne Memorial Justice Assistance Grant Program FY 2017 Local Solicitation, U.S. Dep't of Justice (Aug. 3, 2017).

Justice Programs, worth upwards of $1.2 billion in fiscal year 2018.**[12]**

The enormous impact of such potential authority left our sister circuits firmly convinced that the plain language of § 10102(a)(6) could not support the DOJ's claimed authority. I would join them, and respectfully disagree with the portions of the majority opinion that seemingly find more capacious powers bestowed by the "including" clause within § 10102(a)(6)'s residual clause.

---

**[12]** *See FY 2020 Performance Budget*, Office of Justice Programs (U.S. Dep't of Justice), March 2019, at 40, 44, https://www.justice.gov/file/1144566/download (last visited July 29, 2019).